FILED
United States Court of Appeals
Tenth Circuit

March 29, 2011

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

     Plaintiff - Appellee,

v.

ROBERT F. ROBERTS,

     Defendant - Appellant.

No. 09-3245
(D.C. No. 6:08-CR-10188-MLB-1)
(D. Kan.)

**ORDER AND JUDGMENT**[1]

Before **O'BRIEN**, Circuit Judge, **BRORBY**, Senior Circuit Judge, and **GORSUCH**, Circuit Judge.

Robert F. Roberts appeals from his conviction of being a felon in possession of a firearm. Specifically, he quarrels with key evidentiary rulings and claims the district court erred in denying his post-trial motion for a new trial (based on ineffective assistance of trial counsel) and denying his motion for DNA testing of the firearm.[2] He also claims

---

[1] This order and judgment is an unpublished decision, not binding precedent. 10th Cir. R. 32.1(A). Citation to unpublished decisions is not prohibited. Fed. R. App. 32.1. It is appropriate as it relates to law of the case, issue preclusion and claim preclusion. Unpublished decisions may also be cited for their persuasive value. 10th Cir. R. 32.1(A). Citation to an order and judgment must be accompanied by an appropriate parenthetical notation – (unpublished). *Id.*

[2] Roberts was also convicted of possession of seven grams of marijuana but this conviction is not at issue here.

the evidence was insufficient to support his conviction.  We affirm.[3]

## I.    BACKGROUND

A. Factual Background

We review the facts in the light most favorable to the government, given that it prevailed at trial.  *United States v. Martin*, 613 F.3d 1295, 1298 (10th Cir. 2010).  Around 2 a.m. on April 6, 2008, Officers Thatcher and Pena of the Wichita Police Department were outside a local "after-hours" nightclub preparing to do a "club check."[4]  (R. Vol. 3 at 194-95.)  While waiting for backup, the officers learned by radio traffic that a 911 call from the club had reported a black male had attempted to enter the club with a firearm. The man was described as wearing a white t-shirt, dark pants and a large belt buckle. Thatcher and Pena drove their patrol car through the back parking lot looking for a suspect matching this description.  They saw Roberts, wearing similar clothing, walking along an outside wall behind the club.

Seeing the possible suspect, Thatcher made a U-turn and drove toward Roberts, stopping approximately ten feet away.  Pena, the first out of the patrol car, yelled to Roberts, "hey, stop."  (R. Vol. 3 at 210.)  When Roberts failed to heed Pena's shout, Pena walked toward him.  Roberts began to run away, reaching in the area of his waistband or front pockets as he ran.  Seeing this movement, Pena shouted, "gun."  (*Id*. at 212.)  As Pena ran behind Roberts, Thatcher positioned himself on the other side of several

---

[3] Our jurisdiction derives from 28 U.S.C. § 1291.

[4] A "club check" is a visit to a bar licensed to remain open after 2 a.m. to ensure no liquor is sold after that time.

dumpsters in order to close off a means of escape. Both officers testified they saw Roberts pull a gun from his right pocket, pass it to his left hand and toss it into a dumpster as he ran.

When Roberts' escape route quickly led to a dead end he stopped and complied with Thatcher's command to get on the ground. Thatcher, along with other officers who had arrived at the scene, secured and searched Roberts. They found two small bags of marijuana, one in each of the front coin pockets of Roberts' blue jeans. While Thatcher secured Roberts, Pena searched the dumpster. In it, he found a 9 mm handgun on top of the trash. The gun was photographed, taken into evidence and processed.

B. Procedural Background

Roberts was charged with possessing seven grams of marijuana and being a felon in possession of a firearm. Prior to trial, the government filed a notice and memorandum seeking to admit evidence of a 1999 felony firearms conviction of Roberts; it was offered to show intent – his knowing possession of a firearm.[5] Roberts objected, arguing "the possession of a firearm for the purpose of committing a robbery nine years [earlier had] no probative value in determining whether [he] possessed a firearm at a social club." (R. Supp. Vol. 1 at 20.) He further claimed any probative value of the evidence was far outweighed by its prejudicial effect. The court withheld its ruling until trial.

At trial, the government presented the evidence recited above and, in addition, the

---

[5] "The government need not prove any particular 'intent,' but must show only that a felon possessed a firearm 'knowingly.' Thus, 'knowledge' and 'intent' are equivalent here." *United States v. Moran*, 503 F.3d 1135, 1144 n.6 (10th Cir. 2007) (quotations and citation omitted).

testimony of Officer Robert Shea. Over Roberts' objection, Shea testified to an incident in May, 1999 – nine years before the current charges – he was involved in a police investigation at a residence where Roberts was present. Roberts was asked if he had a weapon. Roberts said no, but the subsequent search revealed a revolver in the right pocket of Roberts' cargo pants. The trial court immediately instructed the jury Shea's testimony could be considered solely for the purpose of determining whether Roberts intended to possess a firearm at the club.

Defense witness Gerald Allen, the co-manager of the club, testified all customers who entered the club through the front door – the only permitted entry – were "wanded" with a metal detector prior to entry and males were "patted down" to make sure they were unarmed. (R. Vol. 3 at 400, 419.) Allen said he called 911 the night of Roberts' arrest after he prevented a male from entering the back door of the club. As Allen pushed the man out the door, he felt the firearm. Allen testified Roberts was not that man.

The defense also re-called Officer Pena to testify about a photograph officers found in Roberts' pocket when he was searched that night. The photograph showed Roberts and some other people inside the club. Pena testified he believed the picture was taken earlier that evening because Roberts was wearing the same clothing in the picture as he was wearing at the time of his arrest. On cross-examination, the government moved to admit the picture. Defense counsel objected, arguing the photograph should not be admitted because it showed hand gestures which could unfairly prejudice the jury against Roberts as being connected with gang activity. The court admitted the photograph and again gave a limiting instruction that its sole purpose was to demonstrate,

if the jury believed it, that Roberts was inside the club that evening.

Detective Timothy Mitchell, a fingerprint examiner for the Wichita police department, testified he had examined the gun found in the dumpster for fingerprints but "did not locate any comparable prints." (R. Vol. 3 at 425.) He said this was not unusual, as only about one in ten firearms have sufficient fingerprint detail to make an effective comparison for identification. When asked about DNA swabs taken from the gun, Mitchell stated he believed the gun was submitted for DNA analysis (an area outside his expertise) but he did not know the results.[6]

Roberts testified to having arrived at the club around midnight with friends. He entered through the front entrance, was patted down by security and then went to the bar. He was not carrying a weapon and did not have a weapon that night. After several hours, he went out the back exit to get a cigar from his car. As he headed back to the club, he stopped to visit with "a couple of guys" he was "acquainted with" who had gathered by the back exit. (R. Vol. 3 at 438.) As Thatcher and Pena pulled through the parking lot, some people started to leave. But when the squad car made a U-turn in the lot, "everybody started runnin'." (Id. at 441.) When Pena got out of the car and called to Roberts, Roberts' acquaintances took off running and he followed suit. Roberts explained he ran because he "had two bags of weed in [his] pocket, marijuana, and [he] was also on house arrest and wasn't supposed to be there." (Id. at 445.) After Roberts was caught, Thatcher asked him "who was your little buddies that took off runnin' and

_____

[6] In fact, neither the prosecution nor the defense had submitted the DNA samples for analysis.

ran down the stairs?" (*Id.* at 447.) When Roberts responded he did not know them, Thatcher told Pena, "I think one of 'em ditched something in the trash can, go over there." (*Id.* at 447.) Pena found the gun and Thatcher began questioning Roberts about the identity of the person who threw it. Roberts told Thatcher he didn't know who threw the gun to which Thatcher responded, "well, we gonna take you and charge you with it." (*Id.* at 448.)

On cross-examination, the prosecutor initiated the following colloquy:

Q. Now, the pockets in your jeans, those are deep pockets, aren't they? Those two front pockets?

A. What do you consider deep?

Q. Well, they're big pockets; right?

A. Yeah. Pretty big.

Q. The coin pockets where you had your marijuana, those are some good sized pockets as well; right?

A. Yeah.

Q. Now, when you carry a firearm, you like to carry it in your pocket; right?

A. I don't carry firearms.

Q. Well, you did in 1999; correct?

A. Yes.

Q. And you had it in your pocket then, didn't you?

A. Cargo pants.

Q. But it was in a pocket, wasn't it?

A. Yeah.

Q. And it was on your right side, wasn't it?

A.  I don't recall.  I don't remember.

(*Id.* at 458-59.)  No objection was lodged.

During closing argument, defense counsel expounded on the fact there was no

physical evidence connecting Roberts to the gun:

> [The police] [s]ubmitted the gun for DNA analysis.  Apparently no DNA or
> otherwise you would have heard about it.  No fingerprints.  Said he
> couldn't find any fingerprints.  If they'd found DNA, I guarantee you, you
> would have heard about it.

(*Id.* at 492.)  Despite the lack of Roberts' fingerprints or DNA on the gun, the jury

convicted him of being a felon in possession of a firearm (Count 1) and possession of 7

grams of marijuana (Count 2).

Sentencing was set for May 18, 2009.  On May 11, 2009, Roberts wrote a letter to

the court asking for a new trial based on ineffective assistance of counsel.  Roberts

alleged his attorney had failed to call three important "subpoenaed" witnesses.[7]  (R. Vol.

1 at 62.)  He alleged one witness was the third arresting officer, Officer Watson.  Roberts

claimed:

> Officers [sic] Watson's testimony would have also supported my innocents,
> [sic] he was also an officer on the scene who placed me in front of a non-
> identifiable line-up, he along with the other two arresting officers were
> trying to convince me to reveal the name of the individual who actually
> threw the gun into the dumpster in which I had no knowledge of.  Officer
> Watson would have also testified to all the conversations between myself
> and other assisting officers, which were who the name of the other
> individual was that actually tossed the gun into the dumpster.
>
> The fact that the officers asked me who it was that threw the gun
> contradicts their testimonies of being one-hundred percent sure that i[t] was

---

[7] Roberts also alleged his attorney had not effectively represented him on Count 2
but that issue is not raised on appeal.

myself who tossed the gun into the dumpster.

(*Id.*)  On May 12, 2009, Roberts' counsel filed a motion for a new trial stating Officer

Watson had told a member of Roberts' family that he would have corroborated Roberts'

version of the events.  The same officer, however, had told defense counsel prior to trial

"he did not hear the other officers ask Mr. Roberts who threw the firearm and did not

himself ask Mr. Roberts to tell the officers who threw the handgun into the dumpster."

(*Id.* at 57.)  On May 13, 2009, the court forwarded Roberts' letter to trial counsel.

Eventually, new counsel, Mr. Falk, took over Roberts' defense.

The sentencing date was delayed.  On July 13, 2009, the district court judge wrote

a letter to counsel to confirm the substance of several telephone calls between the court

and counsel.  Defense counsel informed the court he had discovered DNA swabs were

taken from the gun but trial counsel had not requested a DNA analysis.  He wished to

base the ineffective assistance claim on trial counsel's failure to request DNA testing and

asked for additional time to arrange for a DNA test.  The court asked for further briefing

on the appropriateness of deciding a motion for a new trial based on ineffective assistance

of counsel at this point in the proceedings and on the DNA-testing claim.

After the government and Roberts submitted further briefing as requested by the

court, the district court held an evidentiary hearing on the motions.  At the hearing,

Roberts withdrew his claim based on the purported testimony from the other officers,[8]

---

[8] Falk told the court: "If [the officer] were to testify, I believe he would testify the Defendant told him he didn't do this and he said, well, if you didn't do it, you need to tell them who did."  (R. Vol. III at 580.)  Apparently the second officer's testimony was also unhelpful because only one officer was present at the hearing.

leaving only the ineffective assistance of counsel claim based on the failure to submit the DNA samples for testing. He argued a DNA test may have shown Roberts had not possessed the gun and, further, may have identified the real culprit.

Roberts' trial counsel testified he did not seek DNA testing because the DNA was not the "focal point" of the defense strategy. (R. Vol. III at 524.) Rather, the defense was that Roberts was trying to get marijuana out of his pockets, not a gun. The strategy was to convince the jury that the police officers, looking for a man with a gun, were in a heightened state of alarm. Contrary to the officers' testimony, the parking lot was too dark to actually see Roberts throw a gun. Trial counsel testified he did not feel the need to have the DNA tested because he was already able "to argue to the jury that there was no evidence of [Roberts'] fingerprints on the gun and there was no evidence . . . of his DNA." (R. Vol. 3 at 528.) Although trial counsel did not recollect any specific conversation with Roberts about whether to have the DNA samples tested, he stated, "I thought we were in as good a position as we would have been if the material had been tested and it came back negative. We were able to make the same argument." (*Id*. at 540.)

Falk asked the court to have the DNA tested before reaching a conclusion as to whether trial counsel was ineffective for failing to do so earlier. He argued that if the DNA testing showed Roberts' DNA was not on the gun, Roberts' version of events would have at least the same credibility as Thatcher's and Pena's. More importantly, if the DNA samples showed the presence of the DNA of a third-party rather than Roberts', it would undermine confidence in the jury's verdict. The court rejected this suggestion.

Because DNA testing would not have been dispositive of whether Roberts handled the gun, Roberts failed to show his counsel was ineffective under *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Thus, further testing was unwarranted. It denied the motion for a new trial and sentenced Roberts to 51months imprisonment.

On appeal, Roberts raises five issues: (1) the district court erred in admitting evidence of his 1999 prior felony; (2) the court erred in admitting the photograph of Roberts at the club; (3) the evidence at trial was insufficient to establish guilt beyond a reasonable doubt; (4) the court erred in denying his motions for a new trial based on ineffective assistance of trial counsel; and (5) the court erred in denying his request to test the DNA samples.

## II. DISCUSSION

### A. Trial

#### 1. Admission of Prior Felony

Roberts argues the district court erred in admitting evidence of his 1999 conviction under Rule 404(b). That rule provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Fed. R. Evid. 404(b). "We review the district court's decision to admit evidence under 404(b) for abuse of discretion." *United States v. Commanche*, 577 F.3d 1261, 1266 (10th Cir. 2009). We "will not disturb an evidentiary ruling absent a distinct showing that it was based on a clearly erroneous finding of fact, or an erroneous conclusion of law or

manifests a clear error in judgment." *United States v. Contreras*, 536 F.3d 1167, 1170 (10th Cir. 2008) (quotations omitted).

The admission of "other acts" evidence under Rule 404(b) requires a four-factor inquiry: "(1) whether the evidence is offered for a proper purpose, (2) its relevancy, (3) that the probative value of the evidence is not substantially outweighed by its prejudicial effect, and (4) a limiting instruction is given if the defendant so requests." *United States v. Cardenas Garcia*, 596 F.3d 788, 797 (10th Cir.) (quotations omitted), *cert. denied*, 130 S. Ct. 3299 (2010). "Rule 404(b) is a rule of inclusion, and . . . accordingly 404(b) evidence, like other relevant evidence, should not lightly be excluded when it is central to the prosecution's case." *United States v. Jernigan*, 341 F.3d 1273, 1280 (10th Cir. 2003) (quotations omitted). "The threshold inquiry . . . is whether that evidence is probative of a material issue other than character." *Huddleston v. United States*, 485 U.S. 681, 686 (1988)).

### a) Purpose

"To obtain a conviction under 18 U.S.C. § 922(g)(1) for possession by a felon of a firearm or ammunition, the government had to prove (1) [Roberts] was convicted of a felony; (2) he thereafter knowingly possessed a firearm and/or ammunition; and (3) the possession was in or affecting interstate commerce. *United States v. Wilson*, 107 F.3d 774, 779 (10th Cir. 1997). The government maintains the evidence of Roberts' 1999 possession of a firearm was admissible to show he knowingly possessed the gun tossed into the dumpster. Roberts counters the prosecutor's use of the evidence in cross-examination to show his propensity to carry a firearm belies this contention.

- 11 -

The only contested element was Roberts' knowing possession of the gun. Roberts "placed his knowledge of the firearm's presence at the scene on his person at issue by pleading not guilty to the crime and requiring the government to prove his guilt beyond a reasonable doubt." *United States v. Oaks*, 606 F.3d 530, 539 (8th Cir. 2010.) "Rule 404(b) explicitly contemplates the admission of evidence of prior convictions to establish intent." *United States v. Cherry*, 433 F.3d 698, 701 (10th Cir. 2005). Roberts' prior conviction for possession of a firearm "addresses the material issue of his knowledge of the presence of the firearm and his intent to possess it." *Oaks*, 606 F.3d at 539. Thus, Roberts' 1999 conviction, if it meets the other 404(b) requirements, is admissible.

### b) Relevancy

Roberts argues his prior conviction is too remote in time to be relevant. "[T]here is no absolute rule regarding the number of years that can separate offenses. Rather, the court applies a reasonableness standard and examines the facts and circumstances of each case." *United States v. Franklin*, 704 F.2d 1183, 1189 (10th Cir. 1983); *see United States v. Cuch*, 842 F.2d 1173, 1178 (10th Cir. 1988) (previous assault eight years ago not too remote); *United States v. Walker*, 470 F.3d 1271, 1275 (8th Cir. 2006) ("[T]here is no specific number of years beyond which prior bad acts are no longer relevant to the issue of intent.") (quotations omitted).

In calculating the time span between Roberts' offense and the instant crimes, we do not count any periods of incarceration. *See Cherry*, 433 F.3d at 702 n. 4. Roberts' prior gun possession occurred on May 10, 1999, and his current offense occurred on April 6, 2008. As far as we can tell from the appellate record, Roberts was incarcerated

for at least six years during that period. Consequently, the applicable time between Roberts' 1999 conviction and the instant crime is approximately three years. The district court did not abuse its discretion in admitting Roberts' 1999 conviction because it was too remote in time.

Roberts also argues his 1999 conviction was irrelevant because the factual circumstances surrounding that conviction are distinct from the circumstances in this case. Apparently, Roberts' possession of the gun in 1999 was linked to his involvement in a burglary. He argues the situation here, his possession of a gun at a social event, is so unlike the 1999 incident that the two have no bearing on each other.

Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. The fact Roberts previously possessed a gun in his right front pants pocket is certainly relevant to whether he knowingly possessed a weapon in his right front pants pocket on the night of his arrest. The circumstances were sufficiently similar to establish relevance.

### c) *Prejudicial effect*

Roberts argues the probative value of the 1999 conviction was substantially outweighed by unfair prejudice.[9] "[T]his determination . . . calls for a common sense

---

[9] Federal Rule of Evidence 403 provides:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

assessment of all the circumstances surrounding the extrinsic offense, including prosecutorial need, overall similarity between the extrinsic act and the charged offense, as well as temporal remoteness." *Jernigan*, 341 F.3d at 1283 (quotations omitted). As discussed above, the 1999 conviction carried sufficient similarity and was not too remote in time. In addition, its probative value to the government was substantial. There was no physical evidence connecting Roberts to the gun and Roberts' defense was that Pena and Thatcher were lying about seeing him throw the gun into the dumpster.

Only the unembellished relevant facts of Roberts' prior conviction were revealed. Shea testified Roberts denied he had a weapon but, when searched, Shea discovered a gun in the right front pocket of Roberts' pants. The court did not allow any further details of the prior conviction and immediately provided a limiting instruction. *See United States v. Trogdon*, 575 F.3d 762, 766 (8th Cir. 2009) (danger of unfair prejudice negated when facts of prior conviction limited and court gave a limiting instruction), *cert. denied*, 130 S. Ct. 1116 (2010).

Upon review of the requisite balancing under rule 403, "we give the evidence its maximum reasonable probative force and its minimum reasonable prejudicial value. "*United States v. Cerno*, 529 F.3d 926, 935 (10th Cir. 2008) (quotations omitted). "Because district court judges have front-row seats during trial and extensive experience ruling on evidentiary issues, our review affords the district court considerable discretion in performing the Rule 403 balancing test." *Id*. at 935-36 (quotations omitted). We cannot say the district court's decision to admit this evidence manifests a clear error in judgment.

*d) Limiting Instruction*

The district court gave the jury an appropriate limiting instruction immediately following Officer Shea's testimony. It informed the jury that the parties had agreed to stipulate to the fact that the Roberts had a prior felony conviction and admonished the jury:

> The evidence that you just heard . . . relates to the nature of [Roberts'] prior felony conviction. The nature of the conviction being that he previously had a weapon, a firearm, in 1999 . . . relative to the prior conviction. You may consider that evidence . . . only for the purpose of judging whether he knowingly possessed a weapon in this case . . . . That's a limiting instruction. You can't consider the fact that his previous conviction was for a felon in possession of a firearm for any other purpose than judging whether he knowingly possessed a firearm in this case.

(R. Vol. 3 at 273.)

This instruction appropriately constrained the jury's consideration of the evidence and "[w]e presume jurors will remain true to their oath and conscientiously follow the trial court's instructions." *United States v. Carter*, 973 F.2d 1509, 1513 (10th Cir. 1992). Moreover, in addition to the instruction following Shea's testimony, the jury received instruction explaining how it must limit its consideration of evidence at several points before it began its deliberations. The district court did not abuse its discretion in admitting evidence of Roberts' prior conviction.

2. Admission of Photograph

Roberts claims the district court erred in admitting the photograph taken in the club the evening of his arrest, again arguing the photograph was irrelevant and unfairly prejudicial. This argument is without merit. Defense counsel invited the testimony

- 15 -

regarding the photograph and explained to the court: "The relevance is to show [Roberts] was inside the club after having been frisked and there was no firearm found when he went inside the club." (R. Vol. 3 at 394.)

Roberts further argues the evidence was more prejudicial than probative and the court recognized that fact when it allowed the evidence. He relies on the following exchange:

> The Court: This is ridiculous. What makes you think the jurors are going to recognize this as gang signs?
>
> Defense: Your Honor, I haven't watched as much television as [the jury has]; but from what little I've seen, I'm concerned about that.
>
> The Court: I'll bet you are.

(*Id*. at 394-95.) We do not find the court's sarcasm constitutes recognition that counsel's concerns of undue prejudice were warranted. In addition, the photograph's admission was immediately followed by a limiting instruction:

> [The photograph] is received, Ladies and Gentlemen, for the limited purpose of demonstrating, if you believe it, and it's up to you to decide this based on the testimony, that the Defendant was in the club on the night in question. You're not to assume or take anything else from the photograph.

(*Id*. at 395.)

Moreover, defense counsel was not shy about later using the photograph to advance his argument. It was used during Roberts' direct examination and again in closing argument:

> [W]e know from the photograph Mr. Roberts was in the club before that evening. You'll see the photograph. It's a framed photograph just like you get when you go to certain events. It's not the kind of photograph you're going to carry around in your wallet or carry around with you. It's a photograph from what happened that night. He was wearing the same

- 16 -

clothes. So he was in the club. And he couldn't have gotten in that club without somebody frisking him, without running the wand. He was in the club. If he had a firearm, he wouldn't have gotten in.

(*Id.* at 493.)

"Generally, a party introducing evidence cannot complain on appeal that the evidence was erroneously admitted." *United States v. Cruz-Rodriguez*, 570 F.3d 1179, 1184 (10th Cir. 2009) (quoting *Ohler v. United States*, 529 U.S. 753, 755 (2000)). If Roberts wished to identify a photograph and use it for his defense, the prosecution could certainly have the photograph admitted and shown to the jury. The photograph's relevance is obvious and speculation as to what the jurors may garner from Roberts' gestures does not establish unfair prejudice.

## B. Sufficiency of the Evidence

When reviewing the sufficiency of the evidence to support a jury verdict, we review the record de novo and ask only "whether, taking the evidence --both direct and circumstantial, together with the reasonable inferences to be drawn therefrom-- in the light most favorable to the government, a reasonable jury could find the defendant guilty beyond a reasonable doubt." *United States v. Serrata*, 425 F.3d 886, 895 (10th Cir. 2005) (quotations omitted). "We will not re-weigh the evidence or assess the credibility of witnesses." *Id.* "The evidence necessary to support a verdict need not conclusively exclude every other reasonable hypothesis and need not negate all possibilities except guilt. Instead, [it] only has to reasonably support the jury's finding of guilt beyond a reasonable doubt." *Id.* (quotations omitted).

Roberts claims the government failed to present evidence that could convince a

reasonable factfinder that he knowingly possessed the gun found in the dumpster. He argues: "The government's case rest[ed] almost entirely on the testimony of two Wichita Police Officers." (Appellant's Br. at 19.) Roberts' maintained he rebutted the government's evidence by raising questions as to the lighting in the area and the location of the dumpster in which the gun was discarded, the lack of fingerprints on a gun which was allegedly just handled by the defendant and testimony that Roberts was not the subject of the 911 report.

While this may show the quality of Roberts' defense, the prosecution presented the testimony of eyewitnesses who testified they saw Roberts toss the gun into the dumpster. Despite Roberts' best efforts, "the jury obviously chose to credit the evidence of the government's eyewitnesses and to discredit the evidence in [Roberts'] favor -- a choice the jury was free to make." *Serrata*, 425 F.3d at 896. Considering "the evidence introduced at trial together with the reasonable inferences therefrom," the jury reasonably could find Roberts guilty beyond a reasonable doubt. *Id*.

C. Ineffective Assistance of Counsel

Generally, ineffective assistance claims must be brought on collateral review "so that a factual record enabling effective appellate review may be developed in the district court." *United States v. Hamilton*, 510 F.3d 1209, 1213 (10th Cir. 2007). In rare instances, such claims are sufficiently developed at the district court level to be appropriate for review on direct appeal. *Id*. This is one such instance. The district court held a full evidentiary hearing on the matter and issued an order stating its findings and conclusions. *See United States v. Galloway*, 56 F.3d 1239, 1240 (10th Cir. 1995) ("An

opinion by the district court is a valuable aid to appellate review for many reasons, not the least of which is that in most cases the district court is familiar with the proceedings and has observed counsel's performance, in context, firsthand.").

Roberts claims his attorney's failure to test the gun for DNA, in light of his persistent claims of innocence, constitutes ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "*Strickland* requires a defendant to establish deficient performance and prejudice." *Knowles v. Mirzayance*, 129 S. Ct. 1411, 1420 (2009) (citing *Strickland*, 466 U.S. at 687). "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Id*. Our review "of counsel's performance must be highly deferential." *Id*. We "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. As a result, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Id*. at 690.

In *LaFevers v. Gibson*, we rejected an argument that counsel was ineffective for failing to test DNA because "even favorable DNA test results would not make a difference in this case." 182 F.3d 705, 722 (10th Cir. 1999). DNA testing cannot, despite Roberts' assertions to the contrary, prove that he did not throw the gun into the dumpster. Even if testing revealed the DNA of a third party, that finding would only show that someone other than Roberts had also handled the gun. To be sure, evidence of some other person's DNA would have bolstered Roberts' theory of the case but it would not have ruled out his guilt.

- 19 -

On the other hand, defense counsel was aware of eyewitnesses who were ready to testify they saw Roberts throw the gun into the dumpster. It was not unreasonable for counsel to avoid the possibly damaging evidence which could result from further investigation should Roberts' DNA be found on the gun. As it turned out, counsel was able to elicit favorable testimony that the DNA swabs *were* submitted for testing, but no DNA evidence was offered at trial. Counsel's strategy was sound.

"A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Skinner v. Quarterman*, 528 F.3d 336, 341 (5th Cir. 2008). Roberts' counsel made an informed, strategic decision that further DNA testing posed more of a risk than being able to argue the absence of such evidence and we will not second-guess that choice. Counsel's performance was not deficient.

D. <u>DNA Test</u>

Because further DNA testing could not exonerate Roberts, the district court denied his motion to conduct tests on the DNA swabs retrieved by the government. Roberts claims this was error, arguing "the outcome of this trial is unreliable" and further testing would have provided some "finality." (Appellant's Br. at 20.) We disagree.

Individuals under a federal sentence of imprisonment may move for post-conviction DNA testing under certain conditions. *See* 18 U.S.C. § 3600. While we recognize Roberts had not been sentenced prior to his motion to test the DNA, he was sentenced before the court denied it. Thus, we find the § 3600 analysis helpful given the

posture of this case.

Under § 3600, upon written motion of the defendant, the court that enters a defendant's judgment of conviction is to order DNA testing of specified evidence if ten prerequisites are met. *See* § 3600(a)(1)-(10). Most relevant to this appeal, the applicant is required to identify a theory of defense that would establish his "actual innocence," and the applicant must show that "[t]he proposed DNA testing of the specific evidence may produce new material evidence that would . . . raise a reasonable probability that the applicant did not commit the offense." § 3600(a)(6)&(8). We review de novo whether DNA testing would produce a "reasonable probability" that Roberts did not possess the gun. *See United States v. Fasano*, 577 F.3d 572, 575 (5th Cir. 2009). The district court's "underlying fact findings are reviewed only for clear error." *Id*.

The district court determined "even a negative test result would not demonstrate that [trial counsel] was ineffective and that defendant should receive a new trial." (R. Vol. 3 at 603.) A negative result "would have proved no more that the negative finding on fingerprints." (*Id*.) And, in fact, defense counsel told the jury in closing argument there was no DNA connecting Roberts to the gun.

The only result which would be different from the advantage Roberts had at trial would be the presence of another person's DNA on the gun. Even that result, however, would fail to raise a reasonable probability Roberts did not throw the gun into the dumpster. "DNA testing alone does not always resolve a case. Where there is enough other incriminating evidence and an explanation for the DNA result, science alone cannot prove a prisoner innocent." *Dist. Attorney's Office for the Third Judicial Dist. v.*

- 21 -

*Osborne*, 129 S. Ct. 2308, 2316 (2009). Eyewitness testimony established Roberts disposed of the gun; Pena and Thatcher testified they were certain they saw Roberts throw the gun into the dumpster. The gun was found on the top of the trash in the dumpster moments after Roberts was apprehended. Although Roberts claims he was frisked when he entered the club and no weapon was found, his own testimony established he had just returned from his car when the officers arrived. Given these facts, we cannot find the result of the trial was unreliable or that further testing would produce a "reasonable probability" Roberts did not possess the gun.

AFFIRMED.

**Entered by the Court:**

**Terrence L. O'Brien**
United States Circuit Judge