# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-2858

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Southern District of Iowa. |
| Charles Irvin Trogdon, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: March 13, 2009
Filed: August 6, 2009

_____

Before WOLLMAN, RILEY, and COLLOTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Charles Irvin Trogdon was convicted by a jury of conspiracy to distribute 1000 kilograms or more of marijuana, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A)(vii). The district court[1] sentenced him to the mandatory minimum term of 240 months' imprisonment. Trogdon appeals his conviction, contending that the district court abused its discretion by admitting two partially inaudible audio recordings of conversations between Trogdon and a confidential informant, and by

_____

[1]The Honorable John A. Jarvey, United States District Judge for the Southern District of Iowa, who presided at trial and sentencing.

admitting evidence of his prior felony drug conviction under Federal Rule of Evidence 404(b). Trogdon also challenges the sufficiency of the evidence to sustain his conviction. We affirm.

## I.

We recite the evidence presented at trial in the light most favorable to the verdict. *United States v. Tipton*, 518 F.3d 591, 594 (8th Cir. 2008). From the fall of 2005 to February 2007, Trogdon participated in a conspiracy to distribute marijuana in central Iowa. The conspiracy involved several individuals, including Charles Elwell and Tim Chapman. Trogdon sent drivers to Arizona to purchase marijuana and bring it back to Iowa for distribution. Once the marijuana arrived in Iowa, Elwell, Trogdon, and others unloaded and repackaged it into one-pound bags at Elwell's house. Trogdon then paid Elwell and others to sell it, with the proceeds from those sales eventually returning to Trogdon. Elwell's involvement lasted for about eight months, during which at least 2000 pounds of marijuana were brought to his house for repackaging and distribution. Elwell was arrested in July 2006, after law enforcement officers searched his residence and discovered marijuana, drug notes, bulk packaging material, and multiple scales. Elwell ceased participation in the conspiracy and began cooperating with law enforcement.

Around the time of Elwell's arrest, Tim Chapman became involved in the conspiracy. The mechanics of the scheme remained the same, except that the repackaging took place at the residence of Kim Fisher, Chapman's sister. Marijuana shipments arrived every three to four weeks and totaled at least 1000 pounds before February 2007. At that time, officers searched Fisher's home, seizing thirteen pounds of marijuana, duffel bags, packaging material, and multiple scales. Chapman was arrested soon afterward and immediately agreed to cooperate, admitting that he had distributed marijuana with Trogdon for the past six to eight months. As part of his cooperation, Chapman agreed to wear a "wire," or recording device, during two

meetings with Trogdon. The quality of the recordings turned out to be poor, however, because the wire was taped to Chapman's leg, and Chapman's movement during the encounter interfered with the recording process.

On February 21, 2007, Trogdon was arrested and charged with conspiracy to distribute 1000 kilograms or more of marijuana, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A)(vii). After officers informed Trogdon of the charge against him, Trogdon told officers that "he had not worked up to that," and that he was "just trying to feed the family." He also stated that law enforcement should go after methamphetamine dealers instead, because people who use marijuana simply "go to the fridge."

While in prison awaiting trial, Trogdon admitted to a fellow inmate that he was involved in distributing marijuana, and that he operated a business as a front to conceal his drug activities. He also called his wife and made statements to the effect that he was not going to "tell on" his family or anyone, and that he could no longer work because his name was out.

Before trial, the government filed an information pursuant to 21 U.S.C. § 851(a), providing notice that Trogdon, if convicted, would be subject to a 240-month mandatory minimum sentence because of his prior conviction in 1996 for a felony drug offense. Trogdon filed two motions in limine. The first asked the court to "direct the Government . . . not to talk about [his] prior criminal history," but did not identify any prior offenses. In response, the government gave notice of its intent to introduce Trogdon's prior conviction for conspiracy to distribute 1000 kilograms or more of marijuana, pursuant to Federal Rule of Evidence 404(b). At a conference just prior to jury selection, the court ruled that the conviction would be admitted.

Trogdon's second motion in limine sought to exclude the audio recordings of the meetings between him and Chapman, on the ground that they were too inaudible

to be reliable. After listening to the recordings, the district court[2] declined to exclude them in their entirety, concluding that it would reserve a final decision on admissibility until the parties sought to offer specific portions of them at trial. When the government eventually moved to introduce the recordings at trial, Trogdon did not object to their admission. The court received them into evidence, along with a written transcript prepared by the government of both recordings. Trogdon did not submit a transcript of his own.

After a trial that lasted two and a half days, the jury returned a verdict of guilty. In interrogatory number one, the jury found that the quantity of marijuana involved in the conspiracy was 1000 kilograms or more. Trogdon appeals the conviction.

## II.

We first address Trogdon's contention that the district court erred in admitting the two partially inaudible recordings of the meetings between Trogdon and Chapman. Trogdon argues that the quality of the recordings is so poor as to render them entirely unreliable and untrustworthy. He notes that even the government's own witness, Special Agent Fedderson, admitted at trial that the recordings were "pretty distorted or fuzzy."

Because Trogdon did not object to the admission of the audio tapes at trial, we review his claim for plain error. "The decision to admit partially inaudible audio tapes is a matter within the sound discretion of the district court." *United States v. Huff*, 959 F.2d 731, 737 (8th Cir. 1992). "[T]he district court should assess whether the unintelligible portions of the tape are so substantial, in view of the purpose for which the tapes are offered, as to render the recording as a whole untrustworthy." *Id.*

---

[2]The Honorable Robert W. Pratt, Chief Judge, United States District Judge for the Southern District of Iowa, who entered this pretrial ruling.

(internal quotation omitted). In making this determination, the district court should consider whether the tapes are "audible enough to provide the jury with the 'gist' of the conversations," as well as whether the defendant was given an "opportunity to offer his version of the inaudible portions so as to clear up whatever ambiguities the tapes might have raised." *United States v. Bell*, 651 F.2d 1255, 1259 (8th Cir. 1981); *see Huff*, 959 F.2d at 737-78.

We are satisfied that the district court did not commit plain error by admitting the recordings into evidence. In spite of the admittedly poor quality of the recordings, the conversations in the tapes were "audible enough to provide the jury with the 'gist' of the conversations." *Bell*, 651 F.2d at 1259. During one meeting, for example, Trogdon and Chapman can be heard discussing who may have leaked information to the police, whether either of them had reason to panic, and whether Trogdon's nephew was trustworthy. During a different meeting, Trogdon can be heard making a variety of probative statements, including that he believed he could trust his brother, that "nobody w[ould] know anything," that he was "just trying to work to get the deal," and that Chapman should "keep [his] eyes wide open" and "look around." Given these and other audible statements, we conclude that the inaudible portions are not so pervasive as to render the recordings untrustworthy as a whole. Accordingly, the district court did not plainly err in admitting the recordings into evidence.

### III.

Trogdon also claims that the district court erred in admitting his 1996 conviction for conspiracy to distribute 1000 kilograms or more of marijuana under Rule 404(b). The government sought to introduce the conviction as evidence of Trogdon's knowledge or intent, and the court allowed it. We review the district court's decision to admit Trogdon's prior conviction for abuse of discretion. *See United States v. Gaddy*, 532 F.3d 783, 789 (8th Cir. 2008).

Rule 404(b) prohibits the admission of a defendant's prior bad acts for use as character or propensity evidence, but permits admission of such evidence for other purposes, such as proving intent or knowledge. To be admissible under this rule, the prior conviction "must be (1) relevant to a material issue; (2) similar in kind and not overly remote in time to the crime charged; (3) supported by sufficient evidence; and (4) higher in probative value than prejudicial effect." *United States v. Williams*, 534 F.3d 980, 984 (8th Cir. 2008) (internal quotation omitted). Rule 404(b) is a rule of inclusion, and we "will reverse only when such evidence clearly had no bearing on the case and was introduced solely to prove the defendant's propensity to commit criminal acts." *United States v. Foster*, 344 F.3d 799, 801 (8th Cir. 2003) (internal quotation omitted).

We conclude that the district court did not abuse its discretion in admitting Trogdon's prior conviction. The conviction was relevant to material issues, namely, Trogdon's intent and knowledge. Trogdon argues that the conviction was not relevant, because he challenged only the *quantity* of marijuana involved in the conspiracy and did not pursue a general denial defense that placed knowledge and intent at issue. We disagree. Even if Trogdon had gone so far as to stipulate to the requisite knowledge and intent, the Supreme Court's decision in *Old Chief v. United States*, 519 U.S. 172 (1997), "eliminates the possibility that a defendant can escape the introduction of past crimes under Rule 404(b) by stipulating to the element of the crime at issue." *United States v. Hill*, 249 F.3d 707, 712 (8th Cir. 2001). In any event, Trogdon did challenge the government's proof on the elements of knowledge and intent. He argued that no conspiracy existed, and that the government had proved only a buyer-seller relationship. He also urged the jury to "take a hard look at" his "mere presence" during the incriminating episodes proved by the government. A "mere presence" defense, by definition, challenges the prosecution's proof on the mental element of the charged offense, and places the defendant's knowledge and intent at issue. *See Foster*, 344 F.3d at 801. Trogdon's prior conviction was therefore relevant to material issues in the case.

The prior conviction is also evidence of conduct that is "similar in kind" to the crime charged. Indeed, the prior conduct was identical to the charged conduct, and although it was eleven years old at the time of Trogdon's trial, it was not so remote in time as to be inadmissible under our cases. *See Gaddy*, 532 F.3d at 789. There clearly was sufficient evidence that Trogdon sustained the prior conviction, and any danger of unfair prejudice from admitting the prior conviction does not outweigh its probative value. Only the fact of conviction, date, and drug type were introduced by the government, without any details of the crime, and the court gave a limiting instruction advising the jury that it could consider the conviction only to decide the issues of Trogdon's intent or knowledge. Trogdon's prior conviction satisfies the test for admissibility under Rule 404(b), and we conclude that the district did not abuse its discretion in admitting the evidence.

IV.

Trogdon's final argument is that the evidence was insufficient to sustain his conviction. We review the sufficiency of the evidence *de novo*, viewing the evidence in the light most favorable to the verdict. We will reverse a conviction only if no reasonable jury could have found Trogdon guilty beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *United States v. Santana*, 524 F.3d 851, 853 (8th Cir. 2008).

Trogdon's sole contention with regard to the sufficiency of the evidence is that the government failed to prove the required quantity of marijuana under 21 U.S.C. § 841(b)(1)(A)(vii), namely, 1000 kilograms (or roughly 2200 pounds) or more. According to Trogdon, the government's two key witnesses, Elwell and Chapman, gave imprecise and inconsistent testimony regarding specific drug weights and the timing of certain events. Because of these and other inconsistencies, he argues, and because Elwell and Trogdon had reason to exaggerate Trogdon's role in the conspiracy, no reasonable jury could have found Trogdon guilty.

We conclude that the evidence was sufficient to support the jury's drug-quantity determination. Elwell testified that for about eight months until his arrest in July 2006, he recalled receiving a total of "a couple thousand" pounds of marijuana. Chapman testified that from about mid-2006 to the search of Fisher's home in February 2007, he remembered handling shipments totaling about 1000 pounds, which he described as a conservative estimate. Other witnesses corroborated the quantity of marijuana involved. Kim Fisher, for example, testified that Chapman brought about ten shipments of marijuana to her house, and that each shipment ranged from 60 to 200 pounds. Timothy Phillips also testified that he witnessed marijuana shipments arrive at Fisher's residence once or twice a month for about eight months, and that each one weighed roughly 100 pounds.

This evidence amply supports the jury's conclusion that Trogdon conspired to distribute 1000 kilograms or more of marijuana. It is for the jury to resolve conflicts in testimony and make credibility determinations, and those determinations are "virtually unreviewable on appeal." *United States v. Lohnes*, 554 F.3d 1166, 1169 (8th Cir. 2009) (internal quotation omitted).

\*　　　\*　　　\*

For the foregoing reasons, the judgment of the district court is affirmed.

_____