# United States Court of Appeals
### For the Eighth Circuit

_____

No. 14-2846

_____

United States of America

*Plaintiff - Appellee*

v.

Mario Ronrico Smith

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Minnesota - St. Paul

_____

Submitted: March 13, 2015
Filed: June 19, 2015

_____

Before WOLLMAN and COLLOTON, Circuit Judges, and WHITE,[1] District
Judge.

_____

WHITE, District Judge.

---

[1]The Honorable Ronnie L. White, United States District Judge for the Eastern
District of Missouri, sitting by designation.

Mario Ronrico Smith ("Smith") was charged with possession with intent to distribute cocaine; using and carrying a firearm during a drug trafficking crime; and being a felon in possession of a firearm. Smith filed pretrial motions seeking to suppress evidence and dismiss the case, which motions the district court[2] denied. A jury returned a verdict of guilty on all three counts. The district court denied Smith's motions for judgment of acquittal and for a new trial, and the court sentenced Smith to 280 months imprisonment followed by eight years of supervised release. On appeal, Smith argues that the officer lacked a reasonable suspicion to expand the traffic stop to a search. Smith also contends that the evidence at trial was insufficient for the jury to convict Smith. Further, Smith argues that the district court erred in admitting evidence of Smith's prior conviction and in allowing the government to present "expert" testimony at trial. We affirm.

During the late evening of December 4, 2011, Crystal Police Officer Timothy Tourville was on routine traffic patrol. At around 11:51 p.m., Officer Tourville observed a blue Dodge Charger speeding at 41 miles per hour in a 30 mile an hour zone. Officer Tourville initiated a traffic stop, approached the Charger, and asked the driver to provide a driver's license and proof of insurance. The driver provided a Minnesota driver's license identifying himself as Mario Ronrico Smith. Officer Tourville asked Smith what he was doing in the area, and Smith replied that he had "a girl down the road."

While speaking with Smith, Officer Tourville noticed a "slight odor of marijuana" coming from inside the car. Officer Tourville returned to the squad car, conducted a check on Smith's driver's license, and called for back up to assist him based on his detection of a marijuana odor. Officer Tourville returned to the Charger and informed Smith that he could smell marijuana coming from the car. He asked

_____

[2] The Honorable David S. Doty, United States District Judge for the District of Minnesota.

permission to search the Charger, and Smith stated that he would not consent because the vehicle belonged to his aunt. In an attempt to build a rapport with Smith and obtain Smith's consent to search the car, Officer Tourville asked Smith if he had a job. Smith responded that he worked for Prestige Autos performing detail work.

Officer Tourville spoke with Smith for about 1 ½ minutes, then returned to his car to call for a K-9 unit to conduct a dog sniff outside the vehicle. Officer Tourville and the back up officer, Officer Mason Barland, waited for the K-9 unit, which arrived within a few minutes. As the K-9 unit approached, Smith sped away from the scene in the Charger. The K-9 unit arrived 17 minutes after the initial traffic stop and 11 minutes after Officer Tourville requested Smith's permission to search the Charger.

Smith led the officers on a high-speed chase that lasted several minutes. Officer Barland eventually moved close enough to perform a "PIT" maneuver, forcing the vehicle to spin out and stall. Smith then exited the vehicle, jumped over a fence, and ran across the Interstate highway. Officer Tourville pursued Smith on foot, but Smith escaped into a residential neighborhood. Officer Tourville retained possession of Smith's driver's license.

The Charger was towed to the police garage and placed in a secure evidence area. Search of the vehicle pursuant to a search warrant revealed two rectangular, brick-shaped packages wrapped in black electrical tape. The Drug Enforcement Administration laboratory tested the packages, which were found to contain approximately one kilogram of cocaine each. Other evidence found in the car included $6,000 in U.S. currency in the center console and a Glock .40 caliber hand gun with 12 live rounds of ammunition in the glove compartment. A blue duffle bag contained clothing items and three prescription pill bottles prescribed to Smith. In addition, officers located a wallet containing credit cards, insurance cards, and

membership cards in Smith's name. The officer also found three cell phones, one with a number assigned to Smith, and a partially consumed bottle of Mountain Dew.

A crime scene investigator processed the Charger and the evidence located inside. A forensic scientist tested the DNA and found the DNA profile from the Mountain Dew bottle matched the profile of a known sample of DNA collected from Smith. The forensic scientist also concluded that Smith could not be excluded as a person contributing to DNA found on the gun.

At the time of the incident, Smith was on supervised release as a result of a prior conviction for distribution of controlled substances. His probation officer, Officer Charisse Alston, last heard from Smith on December 1, 2011, when Smith sought permission to travel to New York from December 5 to December 12, 2011. Officer Alston attempted to follow-up with Smith on December 3 and 4 but was unable to reach him. During the period Officer Alston supervised Smith, she confirmed that Smith lived at the location stated on his driver's license, worked at Prestige Autos, and had a cell phone number matching one of the phones recovered from the Charger.

On May 17, 2013, Smith was arrested in Chicago, Illinois. He was indicted on one count of possession with intent to distribute cocaine, in violation 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B), one count of use and carrying of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c), and one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g). Smith filed a pre-trial motion to suppress, arguing that the faint smell of marijuana was insufficient to extend the detention of Smith. The district court adopted the magistrate judge's report and recommendation denying the motion to suppress.[3]

---

[3] The Honorable Arthur J. Boylan, then Chief Magistrate Judge of the United States District Court for the District of Minnesota, now retired.

At trial, Denis Otterness, a police sergeant with the City of Bloomington, testified as an expert witness on drug trafficking, and specifically on the packaging of the cocaine found in the Charger, which was designed to mask odor and avoid drug detection dogs. Officer Otterness also testified that the amount of cocaine found in the Charger was an amount purchased for distribution, not personal use, and that the use of firearms was customary in narcotics sales.

Smith filed a motion in limine to exclude Officer Otterness' testimony as irrelevant and cumulative. The district court denied the motion and allowed Officer Otterness to testify as an expert. The district court also admitted evidence of Smith's 2002 conviction for possession with intent to distribute 77 grams of cocaine, finding the evidence relevant because it fit a pattern of intent or knowledge under Rule 404(b). The district court gave a limiting instruction to the jurors indicating that the prior conviction was not evidence that he committed such an act in this case, merely evidence on the issues of knowledge and intent.

At the close of the trial, Smith filed a motion for judgment of acquittal, arguing that Officer Tourville, a rookie cop, could not identify the physical characteristics of the driver other than the driver's license, and that the physical evidence collected and tested failed to tie Smith to the vehicle or its contents.

Smith appeals the district court's denial of his motion to suppress evidence. Smith also appeals the district court's evidentiary rulings allowing the admission of Smith's 2002 conviction of a drug crime and permitting Officer Otterness to testify as an expert. Finally, Smith appeals the district court's denial of his motion for judgment of acquittal and motion for new trial, arguing that the identification evidence of Smith as the driver of the Charger was insufficient to support a jury verdict.

# I.

Smith first argues that the district court erred in denying his motion to suppress the evidence retrieved from the Charger because the evidence was illegally obtained as a result of an improperly prolonged detention following a routine traffic stop. Smith contends that the "very faint" smell of marijuana was merely a hunch and was insufficient to prolong the traffic stop. Thus, he argues, suppression of the evidence seized from the car was the appropriate remedy. "We review the denial of a motion to suppress *de novo* but the underlying factual determinations for clear error, giving due weight to inferences drawn by law enforcement officials." *United States v. Clutter*, 674 F.3d 980, 982 (8th Cir. 2012).

A law enforcement officer may detain a person for investigation without probable cause to arrest when the officer "has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot.'" *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (quoting *Terry v. Ohio*, 392 U.S. 1, 30 (1968)). "If, during a traffic stop, an officer develops a reasonable, articulable suspicion that a vehicle is carrying contraband, he has 'justification for a greater intrusion unrelated to the traffic offense.'" *United States v. Bloomfield*, 40 F.3d 910, 918 (8th Cir. 1994) (quoting *United States v. Cummins*, 920 F.2d 498, 502 (8th Cir. 1990)). "Whether the particular facts known to the officer amount to an objective and particularized basis for a reasonable suspicion of criminal activity is determined in light of the totality of the circumstances." *United States v. Garcia*, 23 F.3d 1331, 1334 (8th Cir. 1994). "To be reasonable, the suspicion must be more than an 'inchoate and unparticularized suspicion or "hunch".'" *Id.* (quoting *Terry*, 392 U.S. at 27). However, officers may "draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'" *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (quoting *United States v. Cortez*, 449 U.S. 411, 418 (1981)).

-6-

Smith argues that Officer Tourville did not have a reasonable, articulable suspicion sufficient to justify an investigative *Terry* stop because the faint smell of marijuana alone was insufficient. "The Supreme Court has recognized that the odor of an illegal drug can be highly probative in establishing probable cause for a search." *United States v. Caves*, 890 F.2d 87, 90 (8th Cir. 1989) (citing *Johnson v. United States*, 333 U.S. 10, 13 (1948)). This court has held numerous times that the smell of marijuana coming from a vehicle during a proper traffic stop gives an officer probable cause to search for drugs. *See United States v. Barry*, 394 F.3d 1070, 1078 (8th Cir. 2005) (officer's observation of a mist in the vehicle, along with the smell of marijuana and air freshener gave the officer reasonable suspicion to detain defendant); *United States v. Peltier*, 217 F.3d 608, 610 (8th Cir. 2000) (deputy had probable cause to search a truck where the deputy smelled odor of burnt marijuana coming from the cab); *United States v. McCoy*, 200 F.3d 582, 584 (8th Cir. 2000) (the odor of burnt marijuana on the suspect and the smell of air freshener in the car gave officer probable cause to search the vehicle); *United States v. Neumann*, 183 F.3d 753, 756 (8th Cir. 1999) (officer's detection of the smell of burnt marijuana gave him probable cause to search the entire vehicle for drugs).

Smith asks this court to distinguish between a faint smell and a strong smell in determining whether the marijuana odor is enough to prolong a stop. However, we find the smell of marijuana, along with the credible testimony by the officer, is sufficient to establish probable cause to search an automobile and its contents. Here, Officer Tourville testified that he had been trained in the detection of controlled substances, including the odor of both raw and burned marijuana. The lower court credited Officer Tourville's testimony and noted that, while he had probable cause to search the vehicle, Officer Tourville took the less intrusive approach and called the K-9 unit. A district court's findings regarding credibility of witnesses are entitled to great deference and are virtually unreviewable. *United States v. Wright*, 739 F.3d 1160, 1166-67 (8th Cir. 2014) (citations and internal quotations omitted). Because the prolonged stop was justified, the district court did not err in denying Smith's

motion to suppress evidence retrieved from the car. *United States v. Portmann*, 207 F.3d 1032, 1033 (8th Cir. 2000).

Further, the district court found that suppression was not warranted where Smith fled from the scene of a lawful traffic stop, led officers on a high-speed chase, and abandoned the vehicle. Search of abandoned property does not implicate the Fourth Amendment because Smith relinquished any legitimate expectation of privacy he may have had in the Charger and its contents. *United States v. Smith*, 648 F.3d 654, 660 (8th Cir. 2011). Likewise, Smith's resistance by fleeing the scene "provided independent grounds for his arrest, and the evidence discovered in the subsequent searches of his . . . automobile is admissible." *United States v. Dawdy*, 46 F.3d 1427, 1431 (8th Cir. 1995).

## II.

Smith next argues that the district court erred in admitting evidence of Smith's 2002 conviction for possession with intent to distribute cocaine under Rule 404(b) of the Federal Rules of Evidence. Smith contends that the evidence is prejudicial because it tends to prove only his guilt for the current drug charge.

"Rule 404(b) prohibits the admission of a defendant's prior bad acts for use as character or propensity evidence, but permits admission of such evidence for other purposes, such as proving intent or knowledge." *United States v. Trogdon*, 575 F.3d 762, 766 (8th Cir. 2009). "Rulings admitting evidence under Rule 404(b) are reviewed under an abuse of discretion standard and this court 'will reverse only when such evidence clearly had no bearing on the case and was introduced solely to prove the defendant's propensity to commit criminal acts.'" *United States v. Foster*, 344 F.3d 799, 801 (8th Cir. 2003) (quoting *United States v. Ruiz-Estrada*, 312 F.3d 398, 403 (8th Cir. 2002)). To be admissible, the evidence must be "(1) relevant to a material issue; (2) similar in kind and not overly remote in time to the crime charged;

(3) supported by sufficient evidence; and (4) higher in probative value than prejudicial effect." *United States v. Williams*, 534 F.3d 980, 984 (8th Cir. 2008) (internal quotation omitted). "Rule 404(b) is a rule of inclusion, and we will reverse only when such evidence clearly had no bearing on the case and was introduced solely to prove the defendant's propensity to commit criminal acts." *Trogdon*, 575 F.3d at 766 (internal quotation omitted).

We conclude that the district court did not abuse its discretion in admitting Smith's prior conviction. The conviction was relevant to Smith's intent and knowledge. Smith argues, however, that the evidence was not relevant because the sole dispute in this case is whether Smith was the driver. Smith's denial of any wrongdoing resembles a general-denial defense. We have long recognized that a general-denial defense places "intent or state of mind into question and allow[s] the admission of prior criminal convictions to prove both knowledge and intent." *Foster*, 344 F.3d at 801; *see also United States v. Jackson*, 278 F.3d 769, 771 (8th Cir. 2002) (defendant's general-denial defense at trial placed his state of mind at issue).

The prior conviction was also similar in kind to the crime charged, and although the prior conviction was eight years old at the time of the instant offense, "it was not so remote in time as to be inadmissible under our cases." *Trogdon*, 575 F.3d at 766 (eleven years was not too remote in conspiracy to distribute marijuana case); *see also United States v. Gaddy*, 532 F.3d 783, 789 (8th Cir. 2008) (eleven years was not overly remote in possession with intent to distribute cocaine case). Additionally, the evidence of Smith's prior conviction was supported by sufficient evidence. Smith was on supervised release pursuant to his 2002 conviction. His probation officer testified that right around the time of the incident, Smith violated the terms of his supervised release by failing to contact the officer. Finally, any prejudice from the admission of the prior conviction did not outweigh its probative value. The only evidence presented to the jury was the conviction, the date, and the drug type. The court then gave a limiting instruction advising the jury to consider the

prior conviction evidence only to decide whether Smith had the knowledge that he possessed a controlled substance and the intent to possess and distribute it. We find that the evidence of Smith's 2002 conviction weighs in favor of admissibility under Rule 404(b), and the district court did not abuse its discretion in admitting the evidence.

## III.

Next, Smith argues that the court erred in permitting Sergeant Denis Otterness to testify as an expert on the nature of the drug dealing business. "When deciding whether to admit expert testimony under Rule 702 the district court plays a gatekeeping role allowing in testimony only if it is both relevant and reliable." *United States v. Robertson*, 387 F.3d 702, 704 (8th Cir. 2004). The district court has broad discretion in determining relevancy and reliability, and we will reverse the decision to admit expert testimony from a detective only upon a showing of abuse of discretion. *Id.* (citations omitted).

The charges against Smith included possession with intent to distribute cocaine and carrying a firearm in furtherance of a drug trafficking crime. Sergeant Otterness' testimony was relevant to prove the elements of those crimes. Further, Sergeant Otterness had been a police officer for 17 years and spent several of those years as a detective in the Special Investigations Unit, working as a task force officer with DEA on narcotics investigations. He testified regarding the packaging of the cocaine to avoid drug detection dogs; the amount of cocaine which would be for distribution and not personal use; and the other evidence found in the car, such as currency and a firearm, that indicated drug trafficking. "We have repeatedly upheld the admission of this type of expert testimony in drug and firearm cases because it assists the jury in understanding the business of drug trafficking, including the prevalent use of firearms." *United States v. Taylor*, 462 F.3d 1023, 1026-27 (8th Cir. 2006); *see also Robertson*, 387 F.3d at 705 (detectives with over ten years' experience in law

enforcement and training in the area of narcotics were qualified to testify as experts in drug trafficking). After reviewing the testimony and qualifications of Sergeant Otterness, we conclude that the district court did not abuse its discretion in admitting his reliable and relevant expert testimony.

## IV.

Finally, Smith argues that the district court erred in denying his motion for judgment of acquittal and motion for a new trial because the evidence was insufficient to convict Smith. Specifically, Smith challenges the identification evidence and suggests that someone other than Smith was driving the Charger.

With regard to the Rule 29 motion for judgment of acquittal, we review the denial of the motion *de novo*, reversing only if no reasonable juror could have found Smith guilty beyond a reasonable doubt. *United States v. Trotter*, 721 F.3d 501, 504 (8th Cir. 2013). Under Rule 33, the court may "grant a new trial if the interest of justice so requires." The district court has broad discretion in determining whether to grant or deny a motion for a new trial based upon the sufficiency of the evidence. *United States v. Aguilera*, 625 F.3d 482, 486 (8th Cir. 2010). "Motions for new trial based on the sufficiency of the evidence are generally disfavored, however, and '[u]nless the district court ultimately determines that a miscarriage of justice will occur, the jury's verdict must be allowed to stand.'" *Id.* at 487 (quoting *United States v. Campos*, 306 F.3d 577, 579 (8th Cir. 2002)).

We find there was sufficient evidence to support the jury's finding that Smith was the driver of the Charger and committed the charged offenses. Officer Tourville testified that the driver of the Charger presented a valid Minnesota driver's license that identified him as Mario Ronrico Smith and featured a photo of Smith. Officer Tourville retained the license after Smith fled the scene, and the jury had the

opportunity to examine the license at trial. Officer Tourville also testified that he examined both the license and the driver during the stop to ensure the picture matched the driver. He also had nearly three minutes of face-to-face contact with the driver during the stop, and, at trial, Officer Tourville was able to recognize and identify Smith as the driver. Further, the driver told Officer Tourville he worked at Prestige Autos, Smith's place of employment at the time of the stop. The contents of the Charger included prescription pill bottles in Smith's name, a wallet with cards in his name, a cell phone with a number assigned to Smith, and a soda bottle containing his DNA.

Smith challenges Officer Tourville's credibility, arguing that the officer failed to document any identifying information in his police report and that Officer Tourville was unable to describe the driver independent of the driver's license photo. Smith also contends that Officer Tourville's rookie status at the time of the stop rendered him not credible.

Here, Officer Tourville's testimony, in conjunction with the other identifying evidence admitted at trial, was sufficient to identify Smith as the driver of the Dodge Charger. As we have held, "[a] jury's credibility determinations are well-nigh unreviewable because the jury is in the best position to assess the credibility of witnesses . . . ." *United States v. Hodge*, 594 F.3d 614, 618 (8th Cir. 2010). We therefore conclude that the district court did not err in denying Smith's motion for judgment of acquittal. For essentially the same reasons, there was no miscarriage of justice, and the court did not abuse its discretion in denying Smith's motion for a new trial.

The Judgment of the district court is affirmed.

_____