# United States Court of Appeals
## For the Eighth Circuit

_____

No. 17-1335

_____

United States of America

*Plaintiff - Appellee*

v.

Marcos De La Torre

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Nebraska - Omaha

_____

Submitted: May 17, 2018
Filed: October 22, 2018

_____

Before SMITH, Chief Judge, BEAM and COLLOTON, Circuit Judges.

_____

SMITH, Chief Judge.

Marcos De La Torre was convicted of conspiracy to distribute and/or possess with intent to distribute 500 grams or more of a mixture or substance containing methamphetamine ("Count I") ; possession with intent to distribute 5 grams or more of actual methamphetamine ("Count II"); and distribution and/or possession with intent to distribute 50 grams or more of actual methamphetamine ("Count IV"). De

La Torre appeals, arguing that the district court[1] erred in denying his motion to suppress, motion to dismiss for violation of the Speedy Trial Act, and motion for acquittal. He also alleges that the district court made several erroneous evidentiary rulings at trial and contends that his attorney rendered ineffective assistance before and during trial. We decline to review his ineffective-assistance-of-counsel claim and affirm on the remaining issues.

I. *Background*

We take the following facts from the testimony given over the course of De La Torre's four-day trial. We present them "in the light most favorable to the verdict." *United States v. Meeks*, 639 F.3d 522, 525 (8th Cir. 2011) (citation omitted).

In 2014, De La Torre had become a target of investigation for law enforcement in the Omaha, Nebraska area. De La Torre operated De La Torre Auto Repair, an auto repair shop at 4016 Hamilton Street in Omaha. Law enforcement suspected that he illegally distributed controlled substances from that location.

In August 2014, Ryan Slavicek, an acquaintance of De La Torre's, delivered a car to De La Torre's shop for service. The two men decided that De La Torre would conduct a test drive of the car. De La Torre drove the vehicle, with Slavicek and Slavicek's young son as passengers. Soon, local police pulled them over for a traffic violation. Slavicek was removed from the car, while De La Torre and Slavicek's son remained inside. Slavicek consented to a search of the vehicle. The officers recovered about two ounces of methamphetamine from the car's center console. They also found several thousand dollars in cash on both De La Torre and Slavicek. Slavicek had a history of methamphetamine use. Both men were arrested, and Slavicek was subsequently charged in state court with possession of methamphetamine. State

---

[1]The Honorable Laurie Smith Camp, Chief Judge, United States District Court for the District of Nebraska.

-2-

authorities later dismissed this charge, and federal authorities indicted Slavicek for drug possession. Slavicek claimed, from the time of his arrest through De La Torre's trial, that the methamphetamine was not his. At some point, Slavicek agreed to serve as an informant in assisting authorities in the investigation of De La Torre.

Early on the morning of July 1, 2015, police surveilled De La Torre, seeking evidence of illicit drug sales. At about 5:00 a.m., officers began monitoring De La Torre's auto repair business. This business shared a building with another business, Neo's Auto Repair and Collision. At about 6:30 a.m., police also went to De La Torre's home to ask him to consent to a search of it. De La Torre's brother, David, answered the door. David informed police that De La Torre was not at home and that he preferred to discuss the matter with De La Torre before consenting.

With police permission, David called De La Torre and apprised him of the situation. Eventually, De La Torre spoke with the officers directly and granted permission to search the house. "[W]ithin a matter of a few minutes" of the phone call's end, a car arrived at the shop. Tr. of Proceedings, Vol. II, at 257, *United States v. De La Torre*, No. 8:16-cr-00115 (D. Neb. Oct. 26, 2016), ECF No. 108. A man later identified as Miguel Diaz-Huizar, an associate of De La Torre, got out of the car. Diaz-Huizar worked at Neo's and, occasionally, did mechanical work for De La Torre. He was observed entering De La Torre's shop carrying nothing. When he left a short while later, he was carrying a bag containing a plastic container. Police stopped Diaz-Huizar's car for two minor traffic offenses (an expired license plate and failure to signal) shortly after he left the shop. The officers discovered about three quarters of a pound of methamphetamine in the container found in the car. However, the roughly contemporaneous search of De La Torre's house proved fruitless.

In September 2015, acting as an informant, Slavicek initiated a conversation with De La Torre about Slavicek's legal troubles while wearing a wire. When asked about the conversation at trial, Slavicek stated, "[T]he government wanted me to

make contact with [De La Torre] about any drug involvement. My intention while I was there was to confront him about the drugs that he put in the vehicle." *Id.* at 175.

In March 2016, De La Torre was indicted on Counts I, II, and IV. His father, Marcos De La Torre-Casas ("Casas"), was indicted on Count I and for possession with intent to distribute 5 grams or more of methamphetamine ("Count III"). Count I alleged that De La Torre and his father's conspiracy lasted from on or about January 2011 to July 2015. Count II alleged that the possession of methamphetamine took place on August 25, 2014, the date that De La Torre was stopped while with Slavicek. The offense date for Count IV was July 1, 2015, the date of the search of De La Torre's home and business.

De La Torre was arraigned on April 6, 2016.[2] The government moved for detention on that day, which De La Torre resisted. The district court held a detention hearing on April 21 and ruled in favor of the government. On April 26, De La Torre filed a motion to extend the pretrial motions deadline to May 17, which the district court granted. De La Torre filed a motion to suppress on May 17. The magistrate judge held a hearing on the motion on June 16. The magistrate judge first addressed whether it would consider a number of defense motions challenging the validity of the warrant used to search De La Torre's home. At the conclusion of the hearing, the magistrate judge determined that these motions, filed well after the pretrial motions deadline, were inexcusably untimely. The magistrate judge entered his order recommending that the district court deny the motion to suppress. De La Torre filed objections to the magistrate judge's findings and recommendation. The district court issued a written order adopting the magistrate judge's findings and recommendation on August 24. On August 25, the district court set trial for September 27.

_____

[2]All docket events, as well as the trial, took place in 2016.

-4-

On September 1, the government filed a motion to continue the trial date to enable the U.S. Marshals Service (USMS) to secure witness Tammy Gall, who was incarcerated in a federal facility in Phoenix, Arizona. The magistrate judge granted the motion on September 6, referencing both the ends of justice and Gall's status as a necessary witness. De La Torre objected, but the district court noted that De La Torre did not dispute the government's facts. It found the time needed by the USMS to secure the witness was reasonable. The district court overruled De La Torre's objection on September 21.

On October 19, De La Torre filed a motion to dismiss for Speedy Trial Act violations. The motion alleged that the district court had erroneously excluded the delay caused by the continuance to secure Gall's presence at trial. The district court denied the motion, concluding that the continuance promoted the ends of justice and, even if it did not, fewer than 70 non-excludable days would have run before trial:

> The Court concludes that the delay resulting from the continuance served the ends of justice, thus, the time was properly excluded from the speedy trial clock. *See* § 3161(h)(7)(A). Nevertheless, as discussed below, even if the delay resulting from the continuance had not been excluded, 70 days will not have elapsed since Defendant's first appearance, taking into account other excludable periods under the Act.

*United States v. De La Torre*, No. 8:16-cr-00115, 2016 WL 6102338, at *1 (D. Neb. Oct. 19, 2016).

Also shortly before trial, De La Torre filed a motion in limine seeking to exclude the recording of his conversation with Slavicek. He argued that the poor sound quality destroyed its evidentiary value. Additionally, he sought the exclusion of pictures of text messages from Gall's phone that allegedly demonstrated that he supplied her with illegal drugs. He asserted the messages (1) were hearsay, (2) lacked sufficient proof of connection to him to qualify as the admissions of a party opponent,

(3) necessarily included hearsay statements of Gall, and (4) were taken out of context of De La Torre and Gall's conversations. Finally, he argued that lack of forensic analysis on the phone, as well as the limited number of text messages, would mislead the jury and prejudice him in violation of Federal Rule of Evidence 403. On the first day of trial, before voir dire commenced, the district court denied the motion as to the text messages and delayed ruling on the recording until later in the trial.

At trial, the government presented the testimony of Omaha Police Department Officer James Holtmeyer. Officer Holtmeyer was one of the officers who conducted the August 2014 traffic stop of De La Torre and Slavicek. Holtmeyer testified that Slavicek spoke with the officers outside the vehicle and gave consent to search. During this time, De La Torre remained in the car alone with Slavicek's son. Holtmeyer acknowledged that either Slavicek or De La Torre could have been responsible for the methamphetamine found in the center console.

The next witness, DEA Agent Frank Feden, provided information regarding the use of informants in criminal investigations and Slavicek's cooperation with law enforcement. Agent Feden stated that he took part in Slavicek's proffer interview, which spurred the wired conversation. In this operation, law enforcement placed a hidden recorder and video camera on Slavicek and sent him to De La Torre's business to talk to him. They hoped that De La Torre would implicate himself in the sale of illegal drugs.

De La Torre's conversation with Slavicek was recorded with a hidden camera affixed to Slavicek's person and an audio recording device shaped like a key fob and placed on Slavicek's key ring. However, because the recording devices did not transmit contemporaneously, Slavicek was also given a device referred to as a "Kel" that allowed police to hear what was happening in real time. The government moved to admit a DVD of the conversation during Agent Feden's testimony. The district court accepted it over a defense objection. The court gave a limiting instruction,

ordering the jury not to accept anything Slavicek stated in the recording for the truth of the matter asserted.

The government then called Slavicek to the witness stand. Slavicek stated that he had used methamphetamine off and on for several years leading up to his August 2014 arrest. He said he had met De La Torre through work around 2010 and that De La Torre eventually became one of his sources for methamphetamine. He testified that he bought methamphetamine from De La Torre over 20 times, in amounts ranging from 1/4 ounce to 1/4 pound. In addition, he testified that he had purchased large quantities (over two pounds) of marijuana from De La Torre on several occasions. He also disclosed that he had entered into a conditional nonprosecution agreement to have his charges dropped in exchange for testifying at De La Torre's trial; his only instruction from the government was that he be honest.

Slavicek stated that when he and De La Torre conducted drug deals they did so at another auto shop operated by De La Torre. He testified that he personally saw De La Torre in possession of "[p]robably a couple pounds" of methamphetamine in a Tupperware container. Tr. of Proceedings, Vol. II, at 170. According to Slavicek, they never conducted drug deals at the shop on Hamilton Street.

Douglas County Sheriff's Deputy Theresa Ogorzaly testified as to her role in the investigation. She and other officers monitored the drug buy between Casas and Gall. She also explained that after Gall's arrest, she consented to a search of her phone, which Ogorzaly conducted. Ogorzaly took pictures of drug-related text messages Gall exchanged with De La Torre and discussed them with Gall.

Gall, who, like Slavicek, was subject to a cooperation agreement, testified about her relationship with De La Torre and his father. She said that she knew De La Torre supplied methamphetamine, that she purchased methamphetamine from him on several occasions for both personal use and for resale, and that Casas delivered drugs

-7-

for De La Torre. She logged her transactions in a day planner and communicated with De La Torre through both phone calls and text messages. The court received Gall's planner and notebook into evidence during her testimony. The text messages between Gall and De La Torre were also admitted during her testimony.

Diaz-Huizar also testified, claiming that he was not involved in narcotics. He represented that he only picked up the package because De La Torre asked him to and did not know that it contained a controlled substance.

After the government rested, the defense moved for a judgment of acquittal under Federal Rule of Criminal Procedure 29, which the district court denied.

De La Torre testified in his own defense. He stated that he did not tell Diaz-Huizar to pick up a package from the shop; that he barely knew Gall; and that he never texted Gall, spoke to her on the phone, or sold drugs to her. He also categorically denied that he sold any drugs out of his shops. Moreover, he denied responsibility for the methamphetamine recovered in the August 2014 stop and said that he only spoke as he did with Slavicek to mollify him, as he seemed angry and dangerous.

After about four and a half hours of deliberation, the jury found De La Torre guilty on all three counts. De La Torre moved for acquittal or, in the alternative, a new trial. The district court denied the motions.

## II. *Discussion*

On appeal, De La Torre argues that the district court erred in denying his motion to suppress, motion for acquittal, and motion to dismiss. He also contends the

district court made reversible evidentiary errors. Finally, he argues that his counsel provided ineffective assistance by not timely moving for a *Franks*[3] hearing.

A. *Motion to Suppress*

De La Torre seeks reversal of the court's denial of his suppression motion, averring that the search warrant application for his shop was invalid. He contends the warrant application should have disclosed that the search of his home yielded no contraband and that his business shared a building with another business. He also argues that the evidence did not sufficiently connect the "cube shaped object" the affidavit claims Diaz-Huizar possessed as he left the shop to the "brown paper bag" in which the police found drugs after stopping Diaz-Huizar. Appellant's Br. at 14.

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for . . . conclud[ing]" that probable cause existed.

*Illinois v. Gates*, 462 U.S. 213, 238–39 (1983) (alteration and ellipsis in original) (quoting *Jones v. United States*, 362 U.S. 257, 271 (1960)).

> In ruling on a motion to suppress, probable cause is determined based on the information before the issuing judicial officer. We look to the totality of the circumstances to determine whether an affidavit is sufficient to demonstrate probable cause. Probable cause exists if the warrant application and affidavit describe circumstances showing a fair probability that contraband or evidence of a crime will be found in a particular place, and our duty on appeal is simply to ensure that the

---

[3] *Franks v. Delaware*, 438 U.S. 154 (1978).

magistrate had a substantial basis for concluding that probable cause existed. Though the issue of probable cause is reviewed de novo, this court accords great deference to the issuing judge's determination that the affidavit established probable cause.

*United States v. Keele*, 589 F.3d 940, 943 (8th Cir. 2009) (cleaned up).

De La Torre's challenge to the warrant's sufficiency fails. The facts set forth in the affidavit support probable cause. Police observed a man, Diaz-Huizar, entering De La Torre's repair shop empty-handed. Moments later, the same man left carrying something with a noticeable shape. Authorities stopped this man and found him with methamphetamine and a scale. The police observance of contraband potentially originating from De La Torre's shop adequately supported the authorization of a search warrant for the shop. These facts support the finding of a fair probability that evidence of a drug crime would be found in the shop. *See id.* Accordingly, we affirm the denial of the motion to suppress.

## B. *Speedy Trial*

De La Torre argues that the time excluded for the continuance requested by the government should have counted for Speedy Trial Act purposes. The government responds that the delay was needed to secure the presence of witness Tammy Gall and therefore was excludable. The government also notes that even if that period were not excluded, fewer than 70 non-excludable days elapsed between De La Torre's arraignment and trial. The record supports the government's alternative basis for affirmance.

Under the Speedy Trial Act, a defendant must be brought to trial within seventy days from the indictment or the first appearance, whichever occurs later. 18 U.S.C. § 3161(c)(1). If the defendant is not brought to trial within this period, the indictment must be dismissed on the defendant's motion. *Id*. § 3162(a)(2). Excluded from the seventy day

limit are delays granted for certain specific reasons. *Id*. § 3161(h). As relevant here, *excludable periods include delays resulting from the filing of pretrial motions, § 3161(h)(1)(D), the unavailability of an essential witness, § 3161(h)(3)(A)*, the joinder of a codefendant for whom the Speedy Trial Act clock has not yet run, § 3161(h)(6), and a finding by the district court that "*the ends of justice . . . outweigh the best interests of the public and the defendant in a speedy trial*." § 3161(h)(7)(A).

*United States v. Porchay*, 651 F.3d 930, 935–36 (8th Cir. 2011) (emphases added). In an appeal of a Speedy Trial Act ruling, we review factual findings for clear error and legal conclusions de novo. *United States v. Aldaco*, 477 F.3d 1008, 1016 (8th Cir. 2007) (citing *United States v. Van Someren*, 118 F.3d 1214, 1216 (8th Cir. 1997)).

Of the 202 calendar days between De La Torre's arraignment and the commencement of trial, well more than the amount necessary to avoid violating the Speedy Trial Act were excludable due to either pending motions or a pretrial motions deadline extension. *See* 18 U.S.C. § 3161(h)(1)(D) (excluding "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion").

De La Torre's arraignment took place on April 6. This date would normally mark the start of the speedy trial clock. *See* 18 U.S.C. § 3161(c)(1). However, the government filed a detention motion that day, and the district court did not rule on it until April 21. Therefore, the 70-day clock began to run on April 22. On April 26, De La Torre filed a motion to extend the pretrial deadline from April 27 to May 17 because his counsel needed more time to review discovery and determine whether to file any pretrial motions. The district court granted the motion after concluding that the extension served the ends of justice. The court thus excluded April 26 to May 17,

the time period between the filing of the motion and the new deadline.[4] De La Torre filed his motion to suppress on May 17 and again stopped the clock. It did not restart until the district court's denial of the motion on August 24. As of that date, only four non-excludable days had elapsed. The next day, August 25, the court set trial for September 27.

Another seven non-excludable days ran between August 25 and September 1. On that day, the government moved to continue. This motion stopped the clock until September 6, when the district court granted the requested continuance. The clock then ran again from September 7 until September 15, when the government moved for a conflict hearing. The district court denied the motion on September 22.

Therefore, as of September 22, no more than 19 non-excludable days of delay had elapsed. As such, even if we were to reverse the district court's exclusion of the period between September 23 and October 25, the date on which trial commenced, only 51 non-excludable days would have elapsed. Accordingly, the district court did not err in denying De La Torre's motion to dismiss.[5]

### C. *Evidentiary Rulings*

"We review a District Court's evidentiary rulings for clear abuse of discretion, reversing only when an improper evidentiary ruling affected the Defendant's

---

[4]In his motion, De La Torre "acknowledge[d] that any time granted will not be included in any calculation under the Speedy Trial Act." Unopposed Mot. to Extend Pretrial Mots. Deadline at 1, *United States v. De La Torre*, No. 8:16-00115 (D. Neb. Apr. 26, 2016), ECF No. 22.

[5]De La Torre suggests that the two weeks during which the government's detention motion was pending should not have been excluded because "the matter was not under advisement for a single day." Appellant's Br. at 31. However, he does not support this claim with any authority. Accordingly, we disregard it. *See United States v. Sigillito*, 759 F.3d 913, 933 (8th Cir. 2014).

substantial rights or had more than a slight influence on the verdict." *United States v. Espinoza*, 684 F.3d 766, 778 (8th Cir. 2012) (quoting *United States v. Faulkner*, 636 F.3d 1009, 1017 (8th Cir. 2011)).

De La Torre argues that the recording made of his conversation with Slavicek was so lacking in sound quality that it should have been ruled inadmissible under *United States v. Trogdon*, 575 F.3d 762 (8th Cir. 2009). Regarding the text messages, he claims they were unreliable hearsay. He also asserts that the recording and the text messages were inadmissible under Federal Rule of Evidence 403.[6]

### 1. *Slavicek Conversation*

We first consider the recording of De La Torre's conversation with Slavicek. We review this matter under the abuse of discretion standard. *See United States v. Calderin-Rodriguez*, 244 F.3d 977, 987 (8th Cir. 2001) (citing *United States v. Huff*, 959 F.2d 731, 737–38 (8th Cir. 1992)).

> The decision to admit partially inaudible audio tapes is a matter within the sound discretion of the district court. The district court should assess whether the unintelligible portions of the tape are so substantial, in view of the purpose for which the tapes are offered, as to render the recording as a whole untrustworthy. In making this determination, the district

---

[6]Though De La Torre describes the evidence as falling under Federal Rule of Evidence 404(b), we reject this characterization, as all the challenged "exhibits were offered as direct evidence of the charged crimes." Appellee's Br. at 30. We therefore decline to conduct a Rule 404(b) analysis. *See United States v. Ballew*, 40 F.3d 936, 941 (8th Cir. 1994) ("[The appellant's] objection under 404(b) mischaracterizes the evidence in question as evidence of 'other crimes, wrongs, or acts.' The . . . evidence is better described as direct evidence of the crime charged . . . . Direct evidence of the crime charged is not subject to the heightened scrutiny of Rule 404(b)." (citation omitted)).

court should consider whether the tapes are audible enough to provide the jury with the gist of the conversations, as well as whether the defendant was given an opportunity to offer his version of the inaudible portions so as to clear up whatever ambiguities the tapes might have raised.

*Trogdon*, 575 F.3d at 765 (cleaned up).

We have reviewed the recording. Like the recording in *Trogdon*, the audio in this case is of "admittedly poor quality." *Id.* at 765. However, its poor quality did not render the recording wholly untrustworthy. The government introduced the tapes at trial to show De La Torre's response to Slavicek's accusations that he was responsible for the drugs found during the August 2014 traffic stop. The contents of the audible portions of the recording were sufficient to "provide the jury with the gist of the conversation[]." *Id.* (cleaned up). Further, De La Torre testified and provided his own interpretation of the exchange. Therefore, the requirements of *Trogdon* were satisfied.

We also reject De La Torre's claim that the admission of the recording violated Federal Rule of Evidence 403. Before trial and later, when the government offered the recording into evidence, De La Torre objected to its admission. He argued that the government had not laid a sufficient foundation and that any statements made by Slavicek on the recording were inadmissible hearsay. The court admitted the recording subject to a limiting instruction:

> [T]he objections are overruled except with respect to hearsay. And I'm going to give the jury a limiting instruction on that topic.
>
> In the DVD that you will be watching, Exhibit No. 5, you may or may not conclude that certain statements are made by the defendant on that DVD.

Those statements you may accept and consider for whatever purpose you think is relevant.

Any statements that you hear on that DVD from other people, including the individual by the name of Slavicek, Ryan Slavicek, you are not to accept for the truth of the matter asserted.

That is all that I can tell you on that.

Tr. of Proceedings, Vol. I, at 111, *United States v. De La Torre*, No. 8:16-cr-00115 (D. Neb. Oct. 25, 2016), ECF No. 107.

De La Torre made no objection to the limiting instruction. Therefore, we review this claim for plain error. *See United States v. DeRosier*, 501 F.3d 888, 899 (8th Cir. 2007) (standard of review for unobjected-to jury instructions generally); *see also United States v. Williams*, 717 F.3d 35, 42 (1st Cir. 2013) ("When a defendant does not interpose a contemporaneous objection to a limiting instruction, we will review an afterthought complaint about the instruction only for plain error." (citations omitted)); *United States v. Fraser*, 448 F.3d 833, 841 (6th Cir. 2006) ("We review the limiting instruction . . . for plain error because Kahari did not object at trial." (citations omitted)).

De La Torre claims that the court's instruction to the jury not to accept Slavicek's statements in the video for the truth of the matter asserted confused the jury. *See* Fed. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."). But the court's instruction accurately stated the law on the jury's consideration of the statements made in the recording. It informed the jury that the purpose for which they could consider Slavicek's hearsay statements was limited; however, no such constraints cabined their consideration of

-15-

the statements made by De La Torre. De La Torre's objections to the recording's admission demonstrated a concern that could be convicted on the basis of inadmissible hearsay. We see no error, plain or otherwise, in giving the jury an accurate instruction of the law intended to prevent that wrong. *See, e.g., United States v. King*, 36 F.3d 728, 732 (8th Cir. 1994) (recognizing limiting instructions' role in preventing jury from giving inappropriate consideration to out-of-court statements). De La Torre has not shown that a danger relating to any of the bases for exclusion set forth in Rule 403 substantially outweighed the probative value of the evidence.

Accordingly, we affirm the district court's rulings with respect to the recording of the conversation between De La Torre and Slavicek.

### 2. *Tammy Gall's Text Messages*

We next address De La Torre's challenge to the district court's admission of Gall's text messages.

A statement made by a defendant's coconspirator is admissible if the coconspirator made it "during and in furtherance of the conspiracy." Fed. R. Evid. 801(d)(2)(E).

> In order for an out-of-court statement of a co-conspirator to be admissible, the government must show by a preponderance of the evidence (1) that a conspiracy existed; (2) that the defendant and the declarant were members of the conspiracy; and (3) that the declaration was made during the course and in furtherance of the conspiracy. Although courts may consider the contents of the statements, the government must produce independent evidence outside of the statements themselves to establish the existence of the conspiracy.

*United States v. Whitlow*, 815 F.3d 430, 434 (8th Cir. 2016) (cleaned up). "Coconspirator statements are in furtherance of the conspiracy if they discuss the

supply source for the illegal drugs or identify a coconspirator's role in the conspiracy." *United States v. Cazares*, 521 F.3d 991, 999 (8th Cir. 2008) (cleaned up). A declarant need not be indicted as a coconspirator to qualify under Rule 801(d)(2)(E). *See United States v. Davis*, 457 F.3d 817, 825 (8th Cir. 2006) (citing *United States v. Mahasin*, 362 F.3d 1071, 1084 (8th Cir. 2004)). "We review a district court's admission of a coconspirator's statements under Rule 801(d)(2)(E) for an abuse of discretion." *United States v. Exson*, 328 F.3d 456, 461 (8th Cir. 2003) (citing *United States v. Frazier*, 280 F.3d 835, 848 (8th Cir. 2002)).

The evidence at trial established that De La Torre sold drugs and that Gall was arrested with Cases, De La Torre's father, after they conducted a monitored drug buy. Gall testified that Casas was there on his son's behalf and acted as a runner for him. She also testified that she both used drugs and sold them and that De La Torre supplied her with drugs for both purposes on numerous occasions during the course of the conspiracy. She explained to the jury that the text messages concerned drug transactions between herself and De La Torre. Therefore, she qualified as a coconspirator, and the text messages were nonhearsay. *See, e.g.*, *United States v. Conway*, 754 F.3d 580, 588 (8th Cir. 2014) ("[E]vidence is sufficient to show a conspiracy where drugs are purchased for resale." (citation omitted)); *United States v. Bell*, 573 F.2d 1040, 1044 (8th Cir. 1978) ("It is not necessary . . . that a defendant's complicity in a conspiracy be proved beyond a reasonable doubt for a statement to be admissible under Fed. R. Evid. 801(d)(2)(E). The ordinary civil standard of preponderance of the evidence is sufficient since the district court is ruling on admissibility rather than ultimate guilt." (citing *United States v. Petrozziello*, 548 F.2d 20, 23 (1st Cir. 1977)).

De Le Torre's additional challenges to the admission of the text messages are presented as a Rule 403 claim but ultimately go to the text messages' weight and not their admissibility. We discern no reversible error in the district court's admission of the text messages. Two officers and the owner of the cell phone testified as to how

the investigators came to possess the messages. In addition, Gall discussed the nature of her text conversations with De La Torre. The jurors had the text messages available to read for themselves and could assign to them any weight they saw fit.

Therefore, we affirm the district court's admission of the text messages.

## D. *Sufficiency of the Evidence*

De La Torre contends that the evidence was insufficient to support his convictions. He thus claims that the district court erroneously denied his Rule 29 motion.[7] He argues that the government's case is fatally weakened by inconsistencies in the testimony of several witnesses and evidentiary gaps. For instance, he notes that Slavicek had a conditional plea agreement with the government. He also asserts that Slavicek's testimony that he did not appear nervous during the August 2014 stop contradicted Officer Holtmeyer's testimony that Slavicek *did* appear nervous. Additionally, he contends that the jury improperly ignored the possibility that the drugs found in the console might have belonged to Slavicek's child's mother, as the jury had heard evidence that the car was hers and that, like Slavicek, she had also been a user of methamphetamine. On the whole, De La Torre's sufficiency arguments consist of credibility challenges to the various government witnesses. Individually and collectively, these arguments do not show the jury lacked sufficient evidence to find him guilty of the charged offenses.

We defer substantially to a jury's findings at trial:

> We review de novo the denial of a motion for judgment of acquittal based on the sufficiency of the evidence. We look at the evidence in the light most favorable to the verdict and accept all reasonable inferences that can be drawn from the verdict. The standard of review is very strict, and we will reverse a conviction only if we

_____

[7]He does not challenge the district court's denial of his request for a new trial.

conclude that no reasonable jury could have found the accused guilty beyond a reasonable doubt.

> Importantly, we do not review questions involving the credibility of witnesses, but leave credibility questions to the jury. Therefore, even if the evidence adduced at trial rationally supports conflicting hypotheses, we will refuse to disturb the conviction. The presence of one possible innocent explanation for the government's evidence does not preclude a reasonable jury from rejecting the exculpatory hypothesis in favor of guilt beyond a reasonable doubt.

*United States v. Muhammad*, 819 F.3d 1056, 1060 (8th Cir.) (cleaned up), *cert. denied*, 137 S. Ct. 218 (2016).

De La Torre contends that the district court should have granted his motion for acquittal on the basis that "[n]o reasonable jury would have found [him] guilty of the three charges that were leveled against him in the matter." Appellant's Br. at 15. We disagree. In this case, the jury heard sufficient evidence that, if believed, supported a finding that De La Torre was guilty as charged. Accordingly, we hold that sufficient evidence supports the jury's verdict.

## E. *Ineffective Assistance*

De La Torre argues that his trial counsel was ineffective for failing to timely make a *Franks* claim and for deficient trial performance. However, this case does not present those special circumstances that justify consideration of trial counsel's potential ineffectiveness on direct appeal. *See United States v. McAdory*, 501 F.3d 868, 872–73 (8th Cir. 2007). Accordingly, we decline to review De La Torre's ineffective-assistance-of-counsel claim without prejudice. *See id*. at 873.

## III. *Conclusion*

Accordingly, the judgment of the district court is affirmed.

_____

-19-