┌─────────────────────────────────────────────┐
│ **NONPRECEDENTIAL DISPOSITION** │
│ To be cited only in accordance with Fed. R. App. P. 32.1 │
└─────────────────────────────────────────────┘

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted January 20, 2015[*]
Decided January 23, 2015

**Before**

RICHARD A. POSNER, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 14-1421

| | |
|---|---|
| UNITED STATES OF AMERICA, | Appeal from the United States |
| *Plaintiff-Appellee,* | District Court for the Northern District of Illinois, Eastern Division. |
| *v.* | |
| | No. 03 CR 00902-1 |
| TERRY THOMAS, | |
| *Defendant-Appellant.* | Rebecca R. Pallmeyer, *Judge.* |

**O R D E R**

Terry Thomas is serving a 360-month sentence on his federal convictions for trafficking drugs in 1999. In January 2014 he filed this action relying on a provision of the Innocence Protection Act of 2004, Pub. L. 108-405, § 411, 118 Stat. 2260, 2279–83 (codified at 18 U.S.C. § 3600). Thomas wanted the district court to compel the government to

---

[*] After examining the briefs and record, we have concluded that oral argument is unnecessary. Thus the appeal is submitted on the briefs and record. *See* FED. R. APP. P. 34(a)(2)(C).

produce for postconviction DNA testing the plastic bags that contained the drugs introduced at trial. When the government responded that the drug evidence had been destroyed in 2010, the district court denied Thomas's motion. We affirm that decision.

Thomas was charged with conspiracy and a substantive count of possessing heroin and crack with intent to distribute. *See* 21 U.S.C. §§ 841(a)(1), 846. At his jury trial in 2005, several Chicago police officers testified that four times in 1999 they had watched Thomas orchestrating drug sales in a south-side neighborhood. On two of those occasions the officers had seen Thomas yelling "Rocks!" and "Blows!" to passing motorists (slang for crack cocaine and heroin). Whenever a car stopped, he would direct the driver to a woman waiting to take money in exchange for drugs (though none were recovered). On a third occasion, the officers had witnessed Thomas engaging in similar conduct near an alley where people were forming a line. He was detained but released when a search turned up no drugs. Finally, in November 2009, the officers had observed Thomas with two other men who were selling drugs in an alley. When Thomas had appeared, the officers recounted, he pulled a large plastic bag from behind some shrubs and withdrew smaller bags of crack and heroin to replenish a cohort's stock. Thomas was quickly arrested (carrying $190), but analysis of the large and smaller bags did not reveal any latent prints suitable for comparison. Defense counsel argued that Thomas had been framed, and while Thomas did not testify, he called witnesses who placed him elsewhere when the bag of drugs was found. On direct appeal in 2008, however, Thomas "concede[d] that the evidence established he conspired with others to sell drugs on each of the four dates in 1999." *United States v. Thomas*, 520 F.3d 729, 733 (7th Cir. 2008). We affirmed his convictions and sentence. *Id*. at 731–32.

In asking for DNA testing, Thomas asserted that the plastic bags should be subjected to "touch DNA analysis," a technique developed early last decade which allows analysis of just "seven or eight" cells from the outermost layer of skin. *See What is touch DNA?*, SCIENTIFIC AMERICAN, http://www.scientificamerican.com/article/experts-touch-dna-jonbenet-ramsey/ (last visited Jan. 23, 2015); *see generally* Angela L. Williamson, *Touch DNA: Forensic Collection and Application to Investigations*, 18 J. ASSOC. CRIME SCENE RECONSTRUCTION 1 (2012), *available at* www.acsr.org/wp-content/uploads/2012/01/Williamson.pdf (last visited Jan. 23, 2015). Section 3600 imposes 10 requirements before postconviction DNA testing will be authorized, and Thomas needed to satisfy all of those requirements. *See* 18 U.S.C. § 3600(a); *United States v. Fields*, 761 F.3d 443, 481 (5th Cir. 2014); *United States v. Pitera*, 675 F.3d 122, 127–28 (2d Cir. 2012); *United States v. Jordan*, 594 F.3d 1265, 1268 (10th Cir. 2010); *United States v. Fasano*, 577 F.3d 572, 575 (5th Cir. 2009). In his motion he asserted that he is "actually innocent" of

the crimes of conviction, *see* 18 U.S.C. § 3600(a)(1)(A), (6)(B), and that this extremely sensitive DNA test will show that he never handled the plastic bags. According to Thomas, proof that his DNA is absent from bags will make it reasonably probable that he did not commit the offenses, *see id.* § 3600(a)(8)(B), because the bags were the only physical evidence in the case. He further asserted that this theory is consistent with his trial defense that he was framed by Chicago police. *See id.* § 3600(a)(6)(A). Thomas conceded that his motion was presumptively untimely because it was not filed within 60 months of the enactment of § 3600 in 2004. *See id.* § 3600(a)(10)(A). But he argued that he rebutted this presumption by showing good cause and because a manifest injustice would result without testing. *See id.* § 3600(a)(10)(B)(iii), (iv). We haven't before reviewed a request for DNA testing under this statute, but other circuits have concluded that whether a person is entitled to DNA testing is a legal question subject to de novo review and that underlying factual findings are reviewed only for plain error. *See Pitera*, 675 F.3d at 128; *Fasano*, 577 F.3d at 575.

Thomas's assertions about the usefulness of DNA testing do not matter if there is nothing to test, as the district court observed. And, indeed, on appeal Thomas appears to have abandoned his § 3600 claim entirely and now asserts that the destruction of the bags violated 18 U.S.C. § 3600A, a separate provision of the Innocence Protection Act that requires preservation of certain "biological evidence." Thomas also contends that the government violated his right to due process by destroying the plastic bags. These contentions were not made in the district court, however, and thus are not properly before us. *See Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 718 (7th Cir. 2012); *Economy Folding Box Corp. v. Anchor Frozen Foods Corp.*, 515 F.3d 718, 720 (7th Cir. 2008).[1]

---

[1] Section § 3600A requires the government to preserve "biological evidence," subject to certain limited exceptions, so long as the "defendant is under a sentence of imprisonment." Yet, even if Thomas had made a claim under this statute, that claim would have been without merit. Although Thomas characterizes the plastic bags as "biological evidence," presumably because he believes they harbored skin tissue, a plain reading of the statute does not support his theory. The statute defines biological evidence to include a sexual assault forensic examination kit, semen, blood, saliva, hair, skin tissue, or other "identified" biological material. 18 U.S.C. § 3600A(b)(1), (2). In this case, no biological evidence was recovered, and the plastic bags contained no identified biological material. The logical outgrowth of Thomas's contention—that the statute requires preservation of every piece of evidence that might possibly contain traces of skin tissue—goes too far. In fact, the regulations interpreting § 3600A specifically

As for the § 3600 claim that Thomas did make in the district court, the undisputed fact that the plastic bags no longer are "in possession of the Government," *see* 18 U.S.C. § 3600(a)(4), is just one of several hurdles he could not overcome. Thomas needed to satisfy all 10 of the statutory criteria, and his motion does not plausibly allege, as also required, that DNA testing might "produce new material evidence that would . . . raise a reasonable probability that the applicant did not commit the offense," *see id*. § 3600(a)(8). The government's theory of prosecution was that Thomas participated in a conspiracy, and although the police officers testified that he handled the drugs that were seized on the fourth day of surveillance, proving actual possession of those drugs was unnecessary for conviction. The government's eyewitness testimony placed Thomas in the middle of drug transactions involving several other people on four separate occasions. The jury chose to credit this testimony over the testimony of Thomas's alibi witnesses. And the government never relied on forensic evidence to tie Thomas to the scenes of the crimes or to the drugs. The fingerprint expert acknowledged that identifiable prints had not been found on the plastic bags. So if Thomas's DNA is not detectable on the bags, as he hopes, it does not call into question the strength of the evidence against him because forensic evidence that he touched the bags was never used to support the government's eyewitness statements. Moreover, the absence of Thomas's DNA on the bags would not definitively show that he never touched them or that he wasn't involved in a conspiracy to sell drugs. Thomas's admission that the evidence established his guilt lends support to this conclusion, which is consistent with other cases that have interpreted § 3600(a)(8)(B). *See Pitera*, 675 F.3d at 128–30 (concluding that prisoner did not satisfy subsection (a)(8) because his theory that presence of coconspirator's DNA on murder weapon and clothing would not undermine government's theory that prisoner committed crimes with coconspirator and where there was strong corroborating evidence at trial); *Jordan*, 594 F.3d at 1268 (concluding that prisoner failed to satisfy subsection (a)(8) when government's theory of case was not undermined and "the

___

foreclose this reading: "Section 3600A's preservation requirement does not apply to an item of evidence merely because it is known on theoretical grounds that physical things that have been in proximity to human beings almost invariably contain unidentified and imperceptible amounts of their organic matter." 28 C.F.R. § 28.23(b)(1). The regulation uses skin tissue scrapings from underneath the fingernails of a victim as an example of biological skin tissue evidence that must be preserved. *See id*. § 28.23(b), example 1. There is no such skin tissue evidence in this case. And in any event, violation of § 3600A is not ground for a civil remedy, nor does it "provide a basis for relief in any postconviction proceeding." 28 C.F.R. § 28.28(c); *see* 18 U.S.C. § 3600A(f).

government never relied on DNA evidence as part of its case"); *United States v. Roberts*, 417 F. App'x 812, 824 (10th Cir. 2011) (reasoning that DNA test would not lead to reasonable probability that prisoner never handled gun because eyewitnesses testified they saw prisoner dispose of gun and "defense counsel told the jury in closing argument there was no DNA connecting [defendant] to the gun").

There is also the issue of delay. Thomas argues that the presumption of untimeliness arising from filing his motion 107 months after his conviction and 111 months after § 3600 was enacted is rebutted by his showing of good cause and that a manifest injustice would result without testing. Absent "good cause" for not acting sooner or a showing of "manifest injustice," Thomas was required to act within the later of 36 months after conviction (i.e., by February 2008) or 60 months of § 3600's enactment (i.e., by October 30, 2009). *See* 18 U.S.C. § 3600(a)(10)(A). He missed these deadlines by a longshot, and even if the plastic bags were still available for testing, he does not give us any reason to believe that manifest injustice would occur without analyzing them. And Thomas's contention that he has shown good cause because he did not know about touch DNA until May 2013 when his sister alerted him to it is unpersuasive; a prisoner's belated discovery of a decade-old DNA technique that was known when his case went to trial is not "good cause" as contemplated by § 3600.

AFFIRMED.