**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

─────────────

**No. 15-6067**

─────────────

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

SHANE COWLEY,

Defendant - Appellant.

─────────────

Appeal from the United States District Court for the Southern District of West Virginia, at Charleston. John T. Copenhaver, Jr., District Judge. (2:99-cr-00170-1)

─────────────

Argued: December 8, 2015           Decided: February 29, 2016

─────────────

Before TRAXLER, Chief Judge, SHEDD, Circuit Judge, and Elizabeth K. DILLON, United States District Judge for the Western District of Virginia, sitting by designation.

─────────────

Affirmed by published opinion. Judge Dillon wrote the opinion, in which Chief Judge Traxler and Judge Shedd joined.

─────────────

**ARGUED**: James Yash Moore, THE LAW OFFICE OF JAMES Y. MOORE, Ludlow, Kentucky, for Appellant. Erik S. Goes, OFFICE OF THE UNITED STATES ATTORNEY, Charleston, West Virginia, for Appellee. **ON BRIEF**: R. Booth Goodwin II, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charleston, West Virginia, for Appellee.

─────────────

DILLON, District Judge:

Shane Cowley was convicted by a jury in August 2000 of various crimes stemming from the attempted robbery and murder of Jeff Stone. On June 6, 2014, almost five years outside the window to file a timely motion, Cowley filed a motion seeking post-conviction DNA testing pursuant to the Innocence Protection Act (IPA), 18 U.S.C. §§ 3600-3600A. The district court concluded that the motion was untimely and refused to grant a certificate of appealability (COA). Cowley argues here -- as he did before the district court -- that he can rebut the presumption against timeliness under either or both of two exceptions. First, he claims that he has shown "good cause" for the late filing; and second, he contends that denial of his motion would result in "manifest injustice." (Appellant's Br. 17 (citing 18 U.S.C. § 3600(a)(10)(B)(iii)-(iv)).)

For the reasons stated below, we conclude that a certificate of appealability is not required to appeal the denial of an IPA motion and thus that Cowley's appeal is properly before this court. We also affirm the district court's ruling that Cowley's motion was untimely.

I.

A.

In the early morning hours of July 30, 1998, drug dealer Jeff Stone, along with his twelve-year-old son, was accosted by two

2

masked men with guns.[1]  Stone was shot and killed, and the two men

searched for -- but apparently did not find --methamphetamine and

cash that were in a bag in Stone's truck.  Stone's son described

the masked men, and the descriptions matched the general physical

descriptions of Shane Cowley and Ron Moore.

Cowley was charged in a four-count indictment with possession

of a stolen firearm (Count 1), attempted possession with intent to

distribute methamphetamine (Count 2), the use and carrying of a

firearm in relation to a drug trafficking crime (Count 3), and

tampering with a witness (Count 4).  The first three counts arose

from the attempted robbery of Stone.[2]  The fourth was based on

subsequent threats that Cowley made to a witness.  A jury found

Cowley guilty of all four counts, and the district court sentenced

him to a total term of 45 years' imprisonment.

At trial,[3] the government presented testimony from numerous

witnesses, including the eyewitness testimony of Stone's son.

Other witnesses testified that they had heard Cowley speaking about

wanting to rob Stone for drugs and money in the weeks and days

---

[1]  Neither party contends that the district court made any factual errors, so we take the facts from the district court's opinion.

[2]  To date, no one has been charged with Stone's murder.

[3]  All references to the trial in this opinion are to Cowley's March 2000 trial, which followed an initial mistrial.

leading up to the robbery. Additionally, witnesses testified that in the days following Stone's death, Cowley admitted that he had killed Stone, failed to deny it, or denied it only jokingly.

Witnesses also linked Cowley to at least two guns. Beverly Oldham testified to seeing Cowley, a few weeks before the murder, with a gun that matched the description of one of the guns at the scene. There was also testimony that, on the evening of July 29, Cowley and Moore had received and possessed a firearm stolen by Chris Martin.

Cowley testified in his own defense, offering an alibi. He claimed that he and Ron Moore were stealing a blue pick-up truck approximately one mile from the murder scene at the time of the murder. Cowley also offered testimony from another witness who had seen him near the time of the murder at a location other than the murder scene. In response to Cowley's defense, the United States countered that, given the proximity of the locations, there was enough time that evening for Cowley to both steal the truck and attack Stone.

The defense wanted to call Moore as a witness to bolster Cowley's alibi, but Moore invoked his Fifth Amendment right not to testify. Moore's recorded statements, proffered by Cowley, were excluded. Cowley's conviction and sentence were affirmed on direct appeal, and this court's opinion addressed Moore's statements, finding no abuse of discretion in their exclusion. United States

4

v. Cowley, 11 F. App'x 207, 208 (4th Cir. 2001) (per curiam). Cowley did not file a petition for a writ of certiorari.

B.

Cowley subsequently filed a motion to vacate pursuant to 28 U.S.C. § 2255, collaterally attacking his conviction and sentence on a number of grounds. Some of those grounds relate to his allegations here. For example, he argued that his counsel was ineffective for choosing to pursue an alibi defense because that defense was not airtight. He also claimed that counsel failed to call witnesses at trial who would have allegedly testified that Overton Wayne Pauley admitted to participating, with three others, in Stone's robbery and killing. At his evidentiary hearing, Cowley also offered the same basic testimony from Betty Harder he now offers here, i.e., that her daughter, Beverly Oldham, had testified falsely about seeing Cowley with a gun that matched the weapon described by Stone's son.

After the evidentiary hearing, the magistrate judge recommended denying Cowley's § 2255 motion. Cowley filed objections, but the district court overruled them, adopted the proposed findings and recommendation, and denied the motion. This court denied Cowley a certificate of appealability and dismissed the appeal. United States v. Cowley, 186 F. App'x 408 (4th Cir. 2006).

C.

5

In 2004, while Cowley's § 2255 motion was pending before the district court, the IPA became law. As relevant here, the IPA "allows federal prisoners to move for court-ordered DNA testing under certain specified conditions." Dist. Attorney's Office for the Third Judicial Dist. v. Osborne, 557 U.S. 52, 63 (2009). Although his § 2255 proceedings were complete in 2006, Cowley did not file his IPA motion for post-conviction DNA testing until June 6, 2014. After initially failing to list the specific items from the Stone murder scene that he wanted tested, Cowley clarified that he wanted testing done on spent casings (from both a 9 mm gun and a .40 caliber gun); beer cans, bottles, and a beer carton near the crime scene; three items of clothing found in a ditch near Stone's body; a blood stain from the exterior of the driver's side door of Stone's truck; and numerous latent print lifts from various locations at or near the crime scene.

In support of his motion, Cowley provided affidavits from eight people. They were aptly described by the district court in its opinion, and we will not restate all of the testimony here. Summarized, the affidavits, if believed, support both the alibi defense Cowley pursued at trial and his claim that four other persons (Nort Hudson, Wayne Pauley, Robert Parsons, and Suwin

6

Satsuary) were responsible for the Stone robbery and murder, not him.[4]

Perhaps the most significant are the affidavits from Ron Moore, who has now given sworn testimony that completely supports Cowley's alibi, and from Wanda Pittman and Tammy Via Pauley (Wayne Pauley's wife), both of whom aver that Pauley admitted his participation in the Stone robbery and murder to them by telephone and detailed how the crime occurred.[5] Cowley also included the affidavit of Suzanne McComas, a private investigator employed by Cowley, who avers that she began investigating this matter in January 2014. She also identifies Marvin Garrett as an individual to whom Hudson confessed concerning the killing of Stone.

Cowley argues that the testimony in all the affidavits, taken together, provides grounds to believe that he is innocent of his crimes and that others actually committed them. His counsel explained during oral argument that if the items Cowley wants tested from the crime scene contain the DNA from two or more of

---

[4] The identities of the four alleged perpetrators changed slightly from those Cowley identified during his § 2255 proceedings, in which he alleged that Pauley admitted the persons present were himself, Hudson, Satsuary, and Jason Vickers (rather than Parsons).

[5] According to the account purportedly conveyed by Pauley, he was down the road in a running car, Hudson and Satsuary were the two masked men who shot at Stone's truck (and also fit the general physical descriptions given by Stone's son), and Parsons was across the road serving as a lookout.

the participants supposedly identified by Pauley, and there is no DNA found from Cowley or Moore, then it would be highly unlikely that Cowley was involved in the attempted robbery or murder of Stone.[6]

In a 19-page opinion, the district court first set forth the background of Cowley's case and described the evidence Cowley presented in support of his motion. It then described the ten stringent requirements for relief under the IPA and denied the motion because it did not satisfy the last requirement -- that the motion be made in a "timely fashion." The district court also denied a COA.

## II.

Before turning to the merits of the district court's ruling, we first address the government's argument that this appeal is not properly before us because the district court denied a COA and this court has not issued one. Notably, the government provides no authority for the proposition that the IPA requires a COA.[7]

---

[6] Cowley does not explain how the evidence would exonerate him of count four (witness tampering). The conduct underlying that count occurred after Stone's murder and is not dependent on Cowley's presence at the murder scene. It is also unlikely that any DNA evidence would clear him of count one (possession of a stolen weapon) given the ample evidence that he possessed a gun stolen by Chris Martin.

[7] Neither party has cited to any circuit court decision addressing the issue. Further, while the district court denied a COA, that fact does not alter our conclusion. Instead, as district courts sometimes do, it appears that the court here may have denied

8

Instead, the government argues that a COA should be required here because the content of Cowley's motion "reveals itself as a successive habeas petition . . . ." (Appellee's Br. 9.)

We disagree. Although there is certainly some overlap between the evidentiary bases for the innocence claim asserted in Cowley's IPA motion and his earlier § 2255 claims, his motion, which was filed by counsel, invoked only the IPA. Further, the district court treated it only as an IPA motion, and the government has not asserted that it was error to do so. Thus, the issue before us is whether a COA is required to appeal from an order addressing only a motion under the IPA.[8]

Having determined that the order being appealed addresses only a motion under the IPA, we must determine whether Cowley needs a COA to appeal from the district court's ruling. This court has not previously addressed whether a COA is required in this context. Cf. United States v. MacDonald, 641 F.3d 596, 616 n.13 (4th Cir. 2011) (finding it unnecessary to address the petitioner's argument

---

a COA out of an abundance of caution. See, e.g., United States v. Pugh, No. 3:99cr18/RV, 2009 WL 3157682, at *1 (N.D. Fl. Sept. 28, 2009) (denying request for issuance of COA to appeal denial of IPA motion, but noting that "[i]t is not entirely clear" whether one is required).

[8] In light of the procedural posture of this case, we need not decide: (1) the circumstances, if any, that would allow a district court to determine that a motion seeking relief under the IPA is, in fact, a motion under § 2255; or (2) whether a COA would be required to appeal a ruling in such a case.

9

that his request for DNA testing was "properly asserted under the [IPA], rendering it free from the strictures of AEDPA").  In at least one instance, though, we affirmed an order denying DNA testing under the IPA without the issuance of a COA and thus implicitly recognized that no COA is required.  United States v. Nance, 186 F. App'x 363 (4th Cir. 2006) (per curiam), aff'g United States v. Nance, No. 7:92cr135, 2006 WL 5845641 (W.D. Va. Jan. 10, 2006).

Several other circuits have followed this same approach. E.g., United States v. Pugh, 426 F. App'x 876, 877 (11th Cir. 2011) (reviewing refusal to order DNA testing without addressing whether a COA was required); United States v. Jordan, 594 F.3d 1265, 1269 (10th Cir. 2010) (same); United States v. Fasano, 577 F.3d 572, 578 (5th Cir. 2009) (same).  As the Tenth Circuit has recognized, this practice of reviewing a district court's IPA decision without addressing whether the appellate court had jurisdiction to do so absent a COA is effectively treating an IPA motion "as its own motion -- not under § 2255 -- and therefore not subject to the COA requirement."  United States v. Crosby, 515 F. App'x 771, 771 n.2 (10th Cir. 2013).

We now explicitly hold that which we have implicitly recognized: an appeal from the denial of an IPA motion is not subject to a COA requirement.  This ruling is consistent with the plain language of the IPA, which -- as the government concedes --

does not contain a COA requirement. (Appellee's Br. 8 (acknowledging that "[t]he IPA is silent on whether a certificate of appealability is necessary to appeal the denial of a motion for DNA testing").) The IPA thus stands in stark contrast to the statute limiting appeals from the denial of a habeas petition or a § 2255 motion, which expressly requires a COA. See 28 U.S.C. § 2253(c)(1) ("Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from -- (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or (B) the final order in a proceeding under section 2255.").

Also, the text of the IPA itself reflects that it is intended to provide a different avenue for relief from the current habeas remedies. 18 U.S.C. § 3600(h). Specifically, the IPA directs that it does not "affect the circumstances under which a person may obtain DNA testing or post-conviction relief under any other law," that it does not "provide a basis for relief in any Federal habeas corpus proceeding," and that a motion under it is not "a motion under § 2255 for purposes of determining whether [it] or any other motion is a second or successive" § 2255 motion. Id. The fact that the IPA distances itself from traditional habeas proceedings further supports our determination that the IPA does not incorporate the COA requirement for habeas appeals.

11

For all of these reasons, we conclude that Cowley was not required to obtain a COA to appeal the denial of his motion for post-conviction DNA testing under the IPA. Cowley's appeal is therefore properly before us.

## III.

The IPA contains ten specific requirements that a movant must satisfy before a district court can order DNA testing. 18 U.S.C. § 3600(a)(1)–(10); United States v. Pitera, 675 F.3d 122, 127–28 (2d Cir. 2012). One of them is a requirement that the motion be "made in a timely fashion, subject to" certain rebuttable presumptions. 18 U.S.C. § 3600(a)(10). As noted, the district court denied Cowley's motion based on its finding that Cowley failed to satisfy this requirement.

The IPA confers a rebuttable presumption of timeliness on motions "made within 60 months of enactment of the Justice For All Act of 2004 or within 36 months of conviction, whichever comes later." Id. § 3600(a)(10)(A). Cowley's conviction became final in 2001, and the Act was enacted on October 30, 2004, so the 60-month period expired on October 30, 2009. Cowley did not file his IPA motion until June 6, 2014, almost five years outside the window set forth in the Act. Cowley's motion is thus subject to a "rebuttable presumption against timeliness." Id. § 3600(a)(10)(B).

12

This "presumption may be rebutted upon the court's finding" that any one of four exceptions applies.  Id. § 3600(a)(10)(B)(i)-(iv).  Cowley contends that two of the four are applicable here. First, he argues that the presumption has been overcome for "good cause shown."  Id. § 3600(a)(10)(B)(iv).  Second, he posits that he has satisfied the exception in subsection (iii): "that the applicant's motion is not based solely upon the applicant's own assertion of innocence and, after considering all relevant facts and circumstances surrounding the motion, a denial would result in a manifest injustice . . . ."  Id. § 3600(a)(10)(B)(iii). "Manifest" is defined in the IPA as "that which is unmistakable, clear, plain, or indisputable and requires that the opposite conclusion be clearly evident."  Id. § 3600(a)(10)(C)(ii).

We will review the specific rulings appealed here -- the district court's finding under § 3600(a)(10)(B) that Cowley did not establish either "good cause" or "manifest injustice" sufficient to rebut the presumption of untimeliness -- for an abuse of discretion.  Pierce v. Underwood, 487 U.S. 552, 558-563 (1988) (explaining the factors that support abuse-of-discretion review). This is the typical standard of review we apply when addressing district court determinations involving either "good cause" or "manifest injustice."  See, e.g., Colleton Prep. Acad., Inc. v. Hoover Universal, 616 F.3d 413, 417 (4th Cir. 2010) (reviewing ruling on motion to set aside default judgment premised on good

13

cause); Robinson v. Wix Filtration Corp., 599 F.3d 403, 407 (4th Cir. 2010) (reviewing ruling on motion to vacate judgment premised on manifest injustice); Stevens v. Branker, 570 F.3d 198, 207 (4th Cir. 2009) (reviewing ruling on habeas discovery request premised on good cause).[9]

A district court abuses its discretion

> if its decision is guided by erroneous legal principles or rests upon a clearly erroneous factual finding. We do not ask whether we would have come to the same conclusion as the district court if we were examining the matter de novo. Rather, after reviewing the record and the reasons the district court offered for its decision, we reverse for abuse of discretion if we form a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors.

Morris v. Wachovia Sec., Inc., 448 F.3d 268, 277 (4th Cir. 2006) (internal quotation marks and citations omitted).

Applying this deferential standard here, we conclude that the district court did not abuse its discretion in finding that neither of these exceptions is applicable and, consequently, that the motion was untimely. We discuss each exception in turn.

---

[9] Although the parties point to a few published out-of-circuit decisions applying de novo review of legal questions and clear error review of factual findings under the IPA, none of those decisions addresses the standard that applies to a district court's findings as to the existence of "good cause" or "manifest injustice." E.g., Pitera, 675 F.3d at 128; Fasano, 577 F.3d at 575.

14

Cowley contends that he has shown "good cause" because he has been incarcerated for the entire eight years between the passage of the IPA and the filing of his motion. He states that he "is not allowed out of prison to look for investigators and attorneys to take on his case," and that it was only because of the "happenstance" and "random chance" of Investigator McComas's seeing and responding to his request for legal help on a prisoner correspondence website that he was able to obtain her services and find the evidence he has submitted. (Appellant's Reply Br. 4.)

"Good cause" is not defined in the statute, nor is it a term generally used in habeas, aside from the context of when to allow discovery. E.g., United States v. Roane, 378 F.3d 382, 402–03 (4th Cir. 2004) (discussing "good cause" standard in context of allowing discovery to habeas petitioner). But the mere fact that a prisoner is incarcerated and unable to search freely for an investigator cannot serve as the basis for the "good cause" finding under § 3600(a)(10)(B)(iv). Because all (or nearly all) persons bringing IPA motions will be incarcerated, allowing the mere fact of incarceration to satisfy the "good cause" exception would render the presumption meaningless. Ignorance of the law will not suffice, either. Cf. United States v. Sosa, 364 F.3d 507, 512 (4th Cir. 2004) (holding that a habeas limitations period should not be equitably tolled on the grounds that a prisoner is unrepresented and ignorant of the law). Something more is

15

required. See United States v. Williams, No. 3:93-cr-00010, 2011 WL 611551, at *2 n.2 (W.D. Va. Feb. 11, 2011) (noting that it is "arguable" that good cause under the IPA could be established if, for example, more sophisticated types of DNA testing had become available within the five years preceding an IPA motion). Thus, we will not disturb the district court's ruling that Cowley has not shown "good cause" for his delay.

More of Cowley's focus is on the other exception. He argues that denial of his motion would result in a manifest injustice. As the district court correctly noted, this exception requires consideration of "all relevant facts and circumstances surrounding the motion . . . ." 18 U.S.C. § 3600(a)(10)(B)(iii).

The parties debate which of the evidence presented by Cowley is new, and which was available to him either at trial or during his § 2255 proceedings. They also devote time to arguments concerning which evidence is admissible, and the extent to which, if any, certain evidence would undermine the other evidence of guilt. We find it unnecessary, however, to delve into a detailed factual analysis in order to resolve this appeal. Instead, we note that the records in Cowley's criminal case and § 2255 proceedings show that, even prior to his trial, he was aware of the underlying grounds for his claim that DNA testing might exonerate him. Indeed, he had discussed with his counsel, Michael Cline, and his investigator, Michael Mounts, the exact theory he

16

now advances: that Hudson, Pauley, and others committed the robbery and murder and that Cowley was with Moore all night. Cline asked Mounts to investigate that theory and considered pursuing it at trial. As part of Mounts's investigation, he met with Tammy Pauley prior to trial and obtained the same testimony that she now offers. Cline did not believe that he could offer her testimony, however, because it was inadmissible hearsay. Mounts and Cline also had the recorded statements from Moore detailing his and Cowley's whereabouts on the night of the murder and confirming Cowley's alibi. The defense tried unsuccessfully to get those statements into evidence, and their exclusion was upheld on direct appeal.

McComas may have uncovered some "new" evidence in the form of additional corroborating witnesses, such as Wanda Pittman's recounting of Wayne Pauley's admission, and a "new" witness to a purported jailhouse confession by Hudson. But neither the contention that Hudson, Pauley, and others committed the robbery and murder, nor the contention that Moore could fully corroborate Cowley's alibi, is a new notion. Instead, both contentions have been known to Cowley since before his trial, and he raised ineffective assistance claims based on them in his § 2255 proceedings. He also knew at trial that the evidence he now seeks to have tested existed, and he does not argue otherwise.

Despite this, he waited nearly eight years after the conclusion of his § 2255 proceedings to file an IPA motion. And

17

his explanation that he was in prison and unable to hire an investigator is, quite simply, a grossly inadequate explanation for his delay.[10]  Notably, there is no requirement in the IPA that there be "new evidence" to support a request for testing.  Hence, Cowley could have brought this motion at any point after the passage of the IPA; the motion was not dependent on an investigator finding new evidence to support Cowley's defense.

It is also worth noting that Cowley was provided appointed counsel at the § 2255 hearing and throughout those proceedings, and that the district court described counsel as "an experienced criminal defense attorney who . . . vigorously prosecuted this case since his appointment."  Mem. Op. & Order 1, Cowley v. United States, No. 2:02-cv-0402 (S.D.W. Va. March 20, 2006).  Thus, for at least some portion of the time after the IPA was enacted, Cowley had assistance of counsel.

In considering the "relevant facts and circumstances surrounding the motion," as required by 18 U.S.C. § 3600(a)(10)(B)(iii), the district court also examined the IPA's

---

[10]  During oral argument, there was some discussion of whether the district court erred in stating that there was an "absence of any explanation concerning why [Cowley's delay in filing] occurred." (App. 43.)  The entirety of the opinion shows, however, that the court considered Cowley's proffered reason for his delay and found it insufficient.  Indeed, the district court discussed that Cowley did not know McComas prior to October 2013 and that she did not commence her investigation until January 2014.

eighth requirement that the requested DNA testing "may produce new material evidence that would . . . raise a reasonable probability that the applicant did not commit the offense," 18 U.S.C. § 3600(a)(8). The district court stated that Cowley "made a minimal showing, at best, that the evidence sought to be tested . . . would be expected to harbor DNA evidence." (App. 43.) We agree. As previously noted, the items Cowley sought to have tested were spent casings, beer bottles, some clothing, a blood stain, and fingerprints. We question whether any of these items, other than perhaps the blood stain, would contain sufficient biological material from which a DNA sample could be taken, and Cowley's briefs offer nothing on this point.

Finally, as part of considering all the relevant facts and circumstances, we note an additional weakness of Cowley's case on this eighth IPA requirement. Even assuming DNA was available on the items identified by Cowley and in sufficient amounts to be tested, and even if none of it matched Cowley's DNA, and some of it in fact matched Hudson, Pauley, or one of the other individuals Cowley has accused, it is not clear that those results would "raise a reasonable probability" that Cowley did not commit the offense. As other courts have done in finding such a "reasonable probability" lacking, we note that there was significant evidence tying Cowley to the robbery, including his prior statements of intent and subsequent admissions to others regarding his

19

participation. See Pitera, 675 F.3d at 129 (noting strength of corroborating evidence in concluding this factor was not met); Jordan, 594 F.3d at 1268 (same). And only one of the witnesses who testified against him, Keary Drake, has provided a direct recantation (as opposed to a recantation provided only via someone else's affidavit). Moreover, Drake's trial testimony was fairly innocuous. He testified that he had driven with Cowley to Florida shortly after Stone's death, and that Cowley told Drake he was leaving because of the police investigation into Stone's murder. Certainly, this testimony was not the heart of the prosecution's case.

In any event, even if all the items contained testable DNA evidence and even if Cowley could satisfy the requirement that testing of that evidence "may produce new material evidence that would . . . raise a reasonable probability that the applicant did not commit the offense," 18 U.S.C. § 3600(a)(8), we would still affirm the district court's rejection of the motion as untimely. Quite simply, the district court did not abuse its discretion when it found that Cowley failed to show that the denial of his motion would result in an injustice that is "unmistakable, clear, plain, or indisputable," id. § 3600(a)(10)(C), so as to rebut the presumption of untimeliness. See United States v. MacDonald, 37 F. Supp. 3d 782, 793 (E.D.N.C. 2014) (concluding that the IPA's presumption of untimeliness was not rebutted by the fact that

denial causes a "loss of opportunity to prove . . . his innocence conclusively" because if that were the only requirement, every applicant who coupled some other evidence with his own assertion of innocence could satisfy it).

## IV.

For the foregoing reasons, the district court's denial of Cowley's motion seeking DNA testing under the Innocence Protection Act is

AFFIRMED.